UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WALTER CUMMINGS,                          Case No. 14-10957

           Plaintiff,                    Arthur J. Tarnow
v.                                        United States District Judge

PAUL KLEE. S. CAMPBELL,                   Michael Hluchaniuk
L. McROBERTS, McCONNEL,                   United States Magistrate Judge

           Defendants.
_____/

## REPORT AND RECOMMENDATION
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 15)

## I.    PROCEDURAL HISTORY

Plaintiff Walter Cummings, an inmate currently in the custody of the

Michigan Department of Corrections, brings this action, *pro se*, under 42 U.S.C.

§ 1983, claiming a violation of his rights under the United States Constitution.

(Dkt. 1).  On June 6, 2014, this case was referred to the undersigned for all pretrial

purposes by District Judge Arthur J. Tarnow.  (Dkt. 21).  On June 2, 2014,

defendants Paul Klee, Sherman Campbell, Lee McRoberts and Keith McConnell

filed their motion for summary judgment, arguing that plaintiff failed to exhaust

administrative remedies on all claims except his excessive force claim, and that

1

defendants are entitled to qualified immunity on that claim.  (Dkt. 15, 16).[1]

Plaintiff filed his response to defendants' motion on August 27, 2014.  (Dkt. 31).[2]

Defendants' motion for summary judgment is now ready for report and

recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that

defendants' motion for summary judgment be **GRANTED** and that plaintiff's

complaint be **DISMISSED**.

## II.    FACTUAL BACKGROUND

The following pertinent facts were taken from the allegations in plaintiff's

verified complaint and from the evidence submitted by both parties in connection

with defendants' summary judgment motion.

---

[1]  Plaintiff also named Daniel Heyns, the Director of the Michigan Department of Corrections, as a defendant.  On March 25, 2014, the Court dismissed plaintiff's claims against Heyns because plaintiff failed to allege facts demonstrating the personal involvement of Heyns in the incidents giving rise to his complaint.  (Dkt. 7).

[2]  Defendants attached as Exhibit 5 to their motion for summary judgment four video discs of the September 26, 2013 incident alleged in plaintiff's complaint.  (Dkt. 15-6).  Plaintiff was provided an opportunity to view the videos.  On June 26, 2014, plaintiff filed a motion to compel defendants and the Attorney General to turn over all unedited videos and tapes dated September 26, 2013 concerning plaintiff for *in camera* viewing by the Court, arguing that he viewed eight videos, and that the last four of those videos had audio and had been altered.  (Dkt. 27).  On July 31, 2014, defendants filed a motion to stay discovery pending the Court's ruling on defendants' motion for summary judgment.  (Dkt. 29).  On October 14, 2014, the Court entered an Order denying plaintiff's motion to compel and denying in part defendants' motion to stay discovery, ordering defendants to respond to plaintiff's requests for production, seeking all video/tape evidence of the September 26, 2013 incident, and to either produce the requested additional videos or respond that no additional responsive videos exist.  (Dkt. 33).  On October 27, 2014, defendants filed a notice, supported by an affidavit, that the four videos produced to plaintiff are unaltered and that no other videos/recordings exist for this incident or subject matter.  (Dkt. 34, 34-2).

Plaintiff is a prisoner confined by the Michigan Department of Corrections, currently confined at the Lakeland Correctional Facility in Coldwater, Michigan. In September 2013, plaintiff was confined at the Gus Harrison Correctional Facility. On September 26, 2013, plaintiff was moved from a "barrier free" cell in Housing Unit 3 to a "non-barrier free" cell in Housing Unit 1 because he did not qualify for placement in a "barrier free" cell as he did not have a permanent wheelchair accommodation which would require access to a "barrier free" cell. Rather, plaintiff's accommodation was for a distance only wheelchair, which does not require special housing. (Dkt. 1, Complaint ¶¶ 11, 15; Dkt. 15-4, McRoberts Aff. ¶ 3). Plaintiff fell down some stairs in Housing Unit 1 that same day. (Dkt. 1, Complaint, ¶ 19). A video recording shows plaintiff attempting to climb the stairs, then straightening up and falling backwards. Plaintiff was transported on a gurney to Health Care to be examined, complaining of pain in his lower back and head. (Dkt. 1, Complaint, ¶ 19) According to plaintiff's medical records, there was no edema or sign of injury on plaintiff's head or lower back, although plaintiff complained of pain in his lower back on movement. (Dkt. 15-5). Plaintiff was given Tylenol and ice for his back and head and allowed to rest in Health Care for one hour. (*Id.*)

Although plaintiff alleges that the medical staff did not instruct plaintiff to leave, the medical records indicate that he was treated and released with activity

restrictions for two days, and that when custody officers arrived to escort plaintiff back to his cell, he refused to get up off the gurney or make any attempt to leave. (Dkt. 1, ¶ 24; Dkt. 15-5).  Defendants Campbell, McRoberts and McConnell ordered plaintiff to get into his wheelchair and return to his unit but plaintiff refused to do so, stating that he could not get up because of the injuries he sustained from the fall.  (Dkt. 1, Complaint ¶¶ 21-22; Dkt. 15-3, Campbell Aff. ¶ 5; Dkt. 15-4, McRoberts Aff. ¶ 4).  Defendants again ordered plaintiff to return to his cell or he would be placed in segregation for refusing to follow orders. (Dkt. 15-3, Campbell Aff. ¶ 5).  Plaintiff alleges that defendants and other correctional officers physically removed him from the emergency room to segregation.  (*Id.* ¶¶ 25-29).  Plaintiff alleges that when he could not sit in his wheelchair because of pain, he was thrown to the floor and defendants placed their knees on his head and neck area and lower back before handcuffing him and dragging him to the hold.  (*Id.* ¶¶ 29-32).  Defendants, however, assert that Health Care indicated that plaintiff did not have any injuries that prevented him from returning to his assigned cell and that custody staff were instructed to assist in placing plaintiff in his wheelchair so he could be removed from Health Care. (Dkt. 15-3, Campbell Aff. ¶¶ 6,7; Dkt. 15-4, McRoberts Aff. ¶ 4).  Plaintiff refused to allow staff to assist him to his wheelchair by stiffening his body and scooting onto the floor from the wheelchair.  (Dkt. 15-3, Campbell Aff. ¶ 11; Dkt.

4

15-5, McConnell Aff. ¶ 7). Defendants allege that plaintiff was using profanities and swinging his arms back and forth, and that restraints were applied for the safety of the staff and plaintiff. (Dkt. 15-5, McConnell Aff. ¶ 8). Then, because plaintiff refused to allow staff to transport him to segregation in the wheelchair, it became necessary to physically carry plaintiff to segregation. (*Id.* ¶ 9). Plaintiff continued resisting staff by stiffening and hanging his body, becoming "dead weight." (*Id.*)

Once in segregation, plaintiff was placed in a cage on the floor, with no toilet or bed. (Dkt. 1, Complaint, ¶ 33). A shield was placed over plaintiff as a safety precaution and plaintiff's clothing was cut off and his restraints were removed. (*Id.* ¶ 34; Dkt. 15-5, McConnell Aff. ¶ 10). Plaintiff states he was left in the hold for five hours, unable to move and that he urinated on himself three times. (Dkt. 1, Complaint ¶¶ 34-37). Plaintiff later was able to return to his cell via his wheelchair and had to crawl up the stairs to get there. (*Id.* ¶¶ 40-41).

Plaintiff alleges that defendants used excessive force, they conspired to cause him harm and retaliated against him, and that defendants' conduct constituted cruel and unusual punishment toward plaintiff, all in violation of his rights under the First and Eighth Amendments to the United States Constitution. Plaintiff also alleges that defendants' actions violated the Americans with Disabilities Act ("ADA"). Plaintiff seeks damages and injunctive relief.

## III.   ANALYSIS AND CONCLUSIONS

### A.   Standard of Review

Summary judgment is appropriately rendered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 362 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 282 (2012).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Moses v. Providence Hosp. & Med. Ctrs., Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)), *cert. denied*, 561 U.S. 1038 (2010).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adams v. Hanson*, 656 F.3d 397, 401 (6th. Cir. 2011).

A party asserting that a fact cannot be genuinely disputed must support the assertion as specified in Rule 56(c)(1).  Once the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such

6

an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. Fed. R. Civ. P. 56(e)(2), (3); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see also Donald v. Sybra, Inc.*, 667 F.3d 757, 760-61 (6th Cir. 2012).

## B.     Exhaustion of Administrative Remedies

### 1.     Legal Standard

42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Section 1997e(a)'s "exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle,* 534 U.S. 516, 520 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison

life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532. In *Jones v. Bock,* 549 U.S. 199 (2007), the Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones,* 549 U.S. at 216. "Compliance with prison grievance procedures ... is all that is required by the PLRA to 'properly exhaust.'" *Jones,* 549 U.S. at 218. "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner,* 532 U.S. 731, 741 n. 6 (2001). "[P]roper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

In *Jones v. Bock*, the Supreme Court also held that the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Id*. Accordingly, exhaustion is satisfied if plaintiff complied with the applicable MDOC grievance procedure and defendants bear the burden of showing otherwise. *Kramer v. Wilkinson*, 226 Fed. Appx. 461, 462 (6th Cir. 2007) (a prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

A moving party with the burden of proof faces a "substantially higher

hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden–the plaintiff on a claim for relief of the defendant on an affirmative defense–his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.

### 2.   MDOC Policy Directive 03.02.130

Pursuant to MDOC policy directive 03.02.130 entitled "Prisoner/Parolee Grievances," there are four stages to the grievance process that must be followed before a prisoner can seek judicial intervention, each with specific time limits. First, the prisoner must attempt to verbally resolve the issue with the staff member(s) involved within two business days of becoming aware of a grievable issue. If the issue is not resolved, the prisoner may file a Step I grievance within five business days of the attempted verbal resolution. If the prisoner is not satisfied with the Step I outcome, or he does not receive a timely response, he must request a Step II appeal form within five days, and he then has an additional five days to file the Step II appeal. If the inmate is still not satisfied with the

result, he must then file a Step III appeal within 10 business days.  The Step III

response ends the administrative process.  (Dkt. 15-7).

When filing a grievance and/or grievance appeal, an inmate must state the

facts involved with the issue being grieved, and must also include the "[d]ates,

times, places, and names of all those involved in the issue being grieved."  (Dkt.

15-7).  A grievance may be rejected if it is vague, illegible, contains multiple

unrelated issues, or raises issues that are duplicative of those raised in another

grievance filed by the grievant.  A grievance may also be rejected if the grievance

is untimely.  *Id.*

### 3.    Analysis

Plaintiff asserts that he exhausted all of his claims by filing grievance

number ARF 1310-2828-26a.  (Dkt. 1, Pg ID 3).  That grievance alleges

"[e]xcessive and unnecessary force by prison guards" and names defendants

Campbell, McRoberts and McConnell.  (Dkt. 15-8).  In that grievance, plaintiff

complains that on September 26, 2013, he fell down some stairs injuring his lower

back and head, and that he was taken to Health Care.  (*Id.*)  The grievance alleges

that while he was in Health Care, Campbell and McRoberts came in and told him

to get off the gurney and get into his wheelchair and return to his unit or to go to

the "hold."  (*Id.*)  He claims that he could not do so and that the three defendants

and some unidentified custody officers forcefully removed him from Health Care

10

to segregation.  (*Id.*)  He further complains that once in segregation, he was placed in a cage on the floor, without a toilet or bed, and left there for five hours laying in his urine.  (*Id.*)  He also complains that he is "afraid for his health and safety and of retaliation for writing this grievance."  (*Id.*)  This grievance was exhausted through Step III of the grievance process.

Defendants argue that plaintiff's grievance only pertains to plaintiff's excessive force claim and only complains of the actions of defendants Campbell, McRoberts and McConnell.  Defendants state that the only reference to defendant Klee in the grievance pertains to Klee's Step II response to the grievance. Defendants argue that this lone reference is insufficient involvement to impose liability under § 1983.  Accordingly, defendants argue that plaintiff failed to exhaust his administrative remedies as to defendant Klee, and only exhausted his excessive force claim as to defendants Campbell, McRoberts and McConnell. Plaintiff responds that his claims are supported and inferred by the grievance, and that exhaustion was satisfied when the grievance "served its function of alerting the state and inviting corrective action," quoting  *Riccardo v. Ralisch*, 375 F.3d 521 (7th Cir. 2004).

First, as to defendant Klee, the undersigned agrees that plaintiff has failed to exhaust his administrative remedies.  Plaintiff does not name Klee in his grievance nor complain of any actions attributed to Klee in that grievance that would put him

on notice that he was being grieved.  Indeed, Klee's only involvement with the incident grieved by plaintiff is his Step II response.  And, plaintiff acknowledged that Klee was not involved in the underlying incident when he stated in his Step II appeal that "[t]he only person that can respon[d] to this grievance is Warden P. Klee because both Deputy Warden[s] are involved and the only superior of these men is him.  V. Webb interviewed the grievant at Step I."  (Dkt. 15-8, Pg ID 143).[3] It is well settled that a plaintiff cannot maintain a claim against a prison official based solely on his or her denial of the plaintiff's grievance because "[t]he 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983."  *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)); *see also Etheridge v. Evers*, 326 F. Supp.2d 818, 823 (E.D. Mich. 2004) ("plaintiff must allege some specific, personal wrongdoing on the part of the individual defendants, and theories of vicarious liability or respondeat superior are not sufficient") (citing *Rizzo v. Goode*, 423 U.S. 362, 376 (1976)).  "The mere

---

[3] Plaintiff's complaint contains additional allegations regarding Klee, such as that Klee received two letters, one pre-dating and one post-dating plaintiff's grievance, "about the danger of being confine[d] in a non-accessible unit," but those allegations were not part of plaintiff's grievance and thus are precluded for failure to exhaust.  *See Green v. Tudor*, 685 F. Supp.2d 678, 691 (W.D. Mich. 2010) ("The law is clear that the allegations that an official ignored a prisoner's letter are insufficient to establish liability.") (quoting *Watson v. McGinnis*, 964 F. Supp. 127, 130 (S.D.N.Y. 1997)); *Hall v. Raja*, 2010 WL 1258204, at *5 (E.D. Mich. Mar. 30, 2010) ("Since the grievance cannot include an event that had not yet occurred," the grievance could not be said to include an event that occurred six days after plaintiff filed his grievance).

denial of a prisoner's grievance states no claim of constitutional dimension."
*Alder v. Corr. Med. Servs.*, 73 Fed. Appx. 839, 841 (6th Cir. 2003).  A plaintiff's
claim is against the subjects of the grievances, here McConnell, McRoberts and
Campbell, not those who merely decided whether to grant or deny the grievances.
*See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's
complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is
clear, fails to state a claim."); *Lee v. Mich. Parole Bd.*, 104 Fed. Appx. 490, 493
(6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a
defendant denied an administrative grievance or failed to act based upon
information contained in a grievance."); *Nwaebo v. Hawk-Sawyer*, 83 Fed. Appx.
85, 86 (6th Cir. 2003) (same); *Simpson v. Overton*, 79 Fed. Appx. 117, 120 (6th
Cir. 2003) ("[T]he denial of an appeal cannot in itself constitute sufficient personal
involvement to state a claim for a constitutional violation."); *Martin v. Harvey*, 14
Fed. Appx. 307, 309 (6th Cir. 2001) ("The denial of a grievance is not the same as
the denial of a request to receive medical care.").  Therefore, defendant Klee is
entitled to summary judgment and plaintiff's claims against Klee should be
dismissed.

Second, defendants assert that plaintiff failed to exhaust any claims against
the remaining three defendants, other than his excessive force claim.  In addition
to his claim for excessive force in violation of the Eighth Amendment, plaintiff's

*pro se* complaint can also be read to allege a claim for retaliation in violation of the First Amendment, conspiracy, and a statutory claim for violation of the ADA. The undersigned recognizes that plaintiff is not required to allege in his grievance a specific legal theory or facts that correspond to all the required elements of a legal theory. Rather, "it is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Bell v. Konteh*, 450 F.3d 651, 651 (6th Cir. 2006) (finding that this relaxed standard is consistent with the general practice of liberally construing pro se prisoners' filings).

Even under this relaxed standard, the undersigned concludes that plaintiff did not exhaust any claims other than his Eighth Amendment excessive force claim asserted in his complaint. It is well settled that the PLRA's exhaustion requirement applies to all actions brought under § 1983 or "any other Federal law," including the ADA. *See Basat v. Caruso*, 2008 WL 275679, at *3 (E.D. Mich. Jan. 31, 2008) (citing *Porter v. Nussle*, 534 U.S. 516 (2002)). Here, plaintiff did not mention the ADA nor make allegations consistent with an alleged violation of the ADA in his grievance, and thus he has not exhausted his administrative remedies as to this claim. Plaintiff's lone statement that he "ha[s] a documented history of chronic pain in knees, hips and lower back dating from July

14

02, 2002" is insufficient.  *See Ryan v. Michigan Dep't of Corrs.*, 2014 WL 2640392, at *7 (W.D. Mich. June 13, 2014) (plaintiff's grievances about not seeing Dr. Czop as often as he would like, not receiving "proper" prescription medication, and not receiving "proper" medical treatment did not exhaust any ADA claim).[4]

Similarly, plaintiff fails to allege in his grievance that any of the defendants have retaliated against him for engaging in protected activity.  Rather, he simply alleged that he is "afraid" of speculative future "retaliation for writing ***this*** grievance."  (Dkt. 15-8 (emphasis added)).  And, plaintiff does not make any allegations supporting a conspiracy claim in his grievance, and thus has failed to exhaust a conspiracy claim.  *See Siggers v. Campbell*, 652 F.3d 681, 694 (6th Cir. 2011).  In fact, plaintiff makes only conclusory allegations of such a claim in his complaint, and similarly makes conclusory allegations in his response to the summary judgment motion that "[d]efendants conspired to retaliate against plaintiff[.]" (Dkt. 31).  Accordingly, plaintiff has not exhausted a retaliation or

---

[4]  In addition, the undersigned notes that plaintiff could not maintain an ADA claim against the defendants in their individuals capacities.  While it is recognized that the ADA applies to state prisoners, *McKinley v. Bowlen*, 2001 WL 493394, at *1 (6th Cir. May 1, 2001), it is well settled that there is no individual liability under the ADA, as individual defendants are not liable for damages for an alleged violation of the ADA.  *See Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009) ("Title II of the ADA does not [ ] provide for suit against a public official in his individual capacity"); *Kaufman v. Corizon Health, Inc.*, 2013 WL 1289313, at *15 (E.D. Mich. Feb. 22, 2013) (granting summary judgment to defendants because there is no individual liability under the ADA).

conspiracy claim. *See Sanchez-Ramos v. Sniezek*, 370 F. Supp.2d 652, 655 (N.D.

Ohio 2005) ("[T]he prisoner must specifically grieve allegations of retaliation or

conspiracy against the defendants he names in his complaint.") (citing *Garrison v.

Walters*, 18 Fed. Appx. 329 (6th Cir. 2001); *Curry v. Scott*, 249 F.3d 493, 504-05

(6thCir. 2001)). Therefore, the undersigned concludes that plaintiff has only

exhausted his Eighth Amendment excessive force claim and all other claims

should be dismissed.[5]

## C.   Qualified Immunity

### 1.   Legal Standard

The doctrine of qualified immunity means that "'[g]overnment officials

performing discretionary functions generally are shielded from liability for civil

damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'" *Caldwell

v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992) (quoting *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982)). Defendant bears the burden of pleading qualified

---

[5] To the extent plaintiff's grievance can be read to allege a separate claim for deliberate indifference and cruel and unusual punishment because he alleges he was placed in a cage with no toilet, water or bed for five hours, such a claim would fail as a matter of law. The Sixth Circuit has previously held that "deprivations of fresh water and access to the toilet for a 20-hour period, while harsh, were not cruel and unusual punishment." *Hartsfield v. Vidor*, 199 F.3d 305, 310 (6th Cir. 1999) (citing *Stephens v. Carter Cnty. Jail*, 816 F.2d 682 (6th Cir. 1987)). Further, as in *Hartsfield, "*the record provides sworn testimony and documentation, not refuted by plaintiff beyond the allegations in his complaint, that adequate toilet breaks and opportunities to drink were provided to plaintiff." *Id.*; (Dkt. 15-8, Pg ID 138-42).

immunity, but plaintiff bears the burden of showing that the defendant's conduct
violated a right so clearly established that a reasonable official in his position
would have clearly understood that he or she was under an affirmative duty to
refrain from such conduct. *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002)
(citation omitted) (explaining that "[t]he ultimate burden of proof is on the
plaintiff to show that the defendant is not entitled to qualified immunity").

The Supreme Court had established a two-part test in order to determine
whether qualified immunity is applicable to a particular situation. *Saucier v. Katz*,
533 U.S. 194, 201 (2001). The first part of the test involves a determination of
whether the facts of the case, viewed in the light most favorable to the plaintiff,
"show the officer's conduct violated a constitutional right." *Id*. If the first
question was resolved in the affirmative, then the court would decide "whether the
right was clearly established." *Id*. If both questions are resolved in the
affirmative, then the doctrine of qualified immunity does not apply and the case
can proceed.[6]

---

[6] As the Sixth Circuit recently recognized, "ordinarily, analysis of a qualified immunity
claim would entail a third step, in which the Court would determine whether the plaintiff offered
sufficient evidence to indicate that what the officers allegedly did was objectively unreasonable
in light of a clearly established constitutional right. *E.g., Feathers v. Aey*, 319 F.3d 843, 848 (6th
Cir. 2003). However, in an excessive force case, the Court must decide that defendant's conduct
was objectively unreasonable in order to find a constitutional violation. This renders the third
step redundant. 'Thus, qualified immunity in excessive force cases is a two-step analysis.'
*Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009)." *Cole v. City of Dearborn*, 448 Fed. Appx.
571, 574 n.1 (6th Cir. 2011).

The Supreme Court revisited its decision in *Saucier* and concluded that mandatory order of the two part test for determining if qualified immunity applied was no longer sound based on several factors, including judicial economy. *Pearson v. Callahan*, 555 U.S. 223, 227 (2009). While not modifying the factors that should be considered in such a decision, the Court held that sometimes it makes sense to allow the second part of the test to be decided first and that such a decision may resolve the controversy without having to address the first part of the test. *Id.* In *Pearson*, the § 1983 claim of the plaintiff was based on an allegedly unlawful search conducted by the defendant police officers. Without having to engage in the perhaps more complicated decision of determining whether plaintiff's constitutional rights had been violated, the Court found that the constitutional right claimed by plaintiff was not clearly established where lower court case law was consistent with the conduct of the officers and "principles of qualified immunity [should] shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Id.* at 244-45. "This generally means that 'we are free to consider those questions in whatever order is appropriate in light of the issues before us.'" *Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009) (quoting *Moldowan v. City of Warren*, 570 F.3d 698, 720 (6th Cir. 2009)).

"Where ... the legal question of qualified immunity turns upon which

18

version of the facts one accepts, the jury, not the judge, must determine liability, and thus summary judgment should not be granted." *Mitchell v. Cnty. of Washtenaw*, 2009 WL 909581, at *4 (E.D. Mich. Mar. 31, 2009) (quoting *Griffith v. Coburn*, 473 F.3d 650, 656-57 (6th Cir. 2007) (internal quotation marks and citation omitted)).  However, in *Scott v. Harris*, 550 U.S. 372 (2007), the Supreme Court viewed a videotape of the incident in question and concluded that it would be impossible for a jury to find in plaintiff's favor.  In *Scott*, the Eleventh Circuit was held to have erred by accepting the plaintiff's version of the facts as true even though that version was so conclusively contradicted by the record (there, the video evidence) that no reasonable jury could believe it.  *Id.* at 380-81.  In other words, the court is not obliged to, and indeed should not, rely on the nonmovant's version where it is "so utterly discredited by the record" as to be rendered a "visible fiction."  *Id.*  At the summary judgment stage, "once the relevant set of facts is determined and all reasonable inferences are drawn in favor of the plaintiff, to the extent supported by the record, the question whether the [defendants'] actions were objectively unreasonable is 'a pure question of law.'" *Chappell v. City of Cleveland*, 585 F.3d 901, 909 (6th Cir. 2009) (quoting, *Scott*, 550 U.S. at 381 n. 8); *Dunn v. Matatall*, 549 F.3d 348, 353 (6th Cir. 2008) (explaining that *Scott* "instructs us to determine as a matter of law whether the events depicted on [a] video, taken in the light most favorable to [the nonmoving

party], show that the Officers' conduct was objectively reasonable"). Thus, where claimed "material issues of fact" are plainly contradicted by the video evidence of events in question, summary judgment may be granted in favor of defendants. *See e.g.*, *Griffin v. Hardrick*, 604 F.3d 949, 955-56 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 601 (2010).

### 2. Analysis

Defendants argue that they are entitled to qualified immunity on plaintiff's excessive force claim because there is insufficient evidence that their actions violated clearly established law. Defendants contend that the video evidence and defendants' affidavit testimony establish that they did not violate clearly established law, and that what little force was used was applied in a good-faith effort to maintain or restore discipline, not maliciously and sadistically to cause harm. Plaintiff responds that the facts in his complaint and declaration show that defendants' conduct violated a constitutional right, and that plaintiff offered sufficient evidence to indicate that what the defendants allegedly did was objectively unreasonable in light of the clearly established constitutional law.

The Eighth Amendment prohibition against cruel and unusual punishment governs an inmate's claim of excessive force. *Pelfrey v. Chambers*, 43 F.3d 1034, 1036-37 (6th Cir. 1995). To state a claim for excessive force, the inmate must establish that the force was applied maliciously and sadistically to cause harm,

20

rather than in a good faith effort to maintain or restore discipline. *Hudson v. McMillian*, 501 U.S. 1, 7 (1992); *Pelfrey*, 43 F.3d at 1037. In making this determination, a court must consider the reasons for the use of force, the type and amount of the force used, and the extent of the injury inflicted. *See Hudson*, 501 U.S. at 7. However, "the good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment." *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986) (citing *Whitley v. Albers*, 475 U.S. 312 (1986); *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)).

An inmate may suffer a violation of his Eighth Amendment rights even though he did not suffer a serious injury at the hands of corrections officers. *Hudson*, 501 U.S. at 9-10. The extent of injury suffered by an inmate is one factor that may suggest "whether the use of force could plausibly have been thought necessary" in a particular situation, "or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley v. Albers*, 475 U.S. 312, 321 (1986). However, the Eighth Amendment does not prohibit a *de minimis* use of force "provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 501 U.S. at 10. What constitutes *de minimis* use of force depends upon the circumstances of each case. "[T]he core judicial inquiry is . . . whether the

21

force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. The relevant inquiry then, is whether, in consideration of the totality of the circumstances, the force used by the defendants was excessive.

Defendants have provided videotape of their attempt to transport plaintiff from Health Care and their transport of plaintiff to segregation. This video evidence is consistent with the affidavits defendants provided. The undisputed facts of this case reflect that defendants used force in response to plaintiff's refusal to leave Health Care. However, the undersigned, after reviewing the videos of the alleged incident, finds that the force used by defendants to attempt to transfer plaintiff from the gurney to his wheelchair, and then to transfer him to segregation was necessary and reasonable under the circumstances. Contrary to plaintiff's allegations that defendants threw him down on the floor, placed their knees on his head, neck and lower back areas to handcuff him, and then dragged him to segregation, the video evidence is consistent with defendants' statements that defendants attempted to remove plaintiff from the gurney and place him in his wheelchair, and that plaintiff reacted by stiffening his body, straightening his legs and sliding out of the wheelchair onto the floor. After defendants' attempts to place plaintiff again in the wheelchair similarly failed, and plaintiff was swinging his arms and using profanity, defendants proceeded to restrain him with handcuffs

22

and attempted to carry him to segregation.  Plaintiff was placed in the holding cell, and a shield was placed over him as his restraints were removed.  As the Supreme Court explained in *Scott v. Harris*, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  550 U.S. 372, 380 (2007).  Instead, the Court should "view[] the facts in the light depicted by the videotape."  *Id.* at 381; *see also Marvin v. City of Taylor*, 509 F.3d 234, 239 (6th Cir. 2007).  A review of that video evidence shows that defendants' use of force was made in a good faith effort to maintain discipline, and that defendants had a rational basis for using force as plaintiff would not leave Health Care and return to his cell as ordered.  In consideration of these facts and *Hudson's* admonition that corrections officers are to be given "wide-ranging deference" to take steps "that in their judgment are needed to preserve internal order and discipline and to maintain institutional security," the Court finds that plaintiff has failed to present a genuine issue of material fact as to whether defendants applied force maliciously and sadistically with the intent to cause harm.  *Hudson*, 503 U.S. at 6.

Further, the undisputed facts show that defendants used a minimal amount of force.  A *de minimis* use of force does not violate the Eighth Amendment. *Hudson*, 503 U.S. at 9 ("[N]ot every malevolent touch by a prison guard gives rise

to a federal cause of action. . . .  The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'") (internal citations and quotations omitted).  Here, defendants' attempts to place plaintiff in his wheelchair and subsequent carrying of plaintiff to segregation was a *de minimis* use of force. Defendants were charged with escorting plaintiff to his cell, and then, when he would not sit in the wheelchair, escorting him to segregation.  And, the undisputed facts establish that plaintiff suffered no objective injury and required no medical treatment due to defendants' use of force.  *See Moore v. Holbrook*, 2 F.3d 697, 704 (6th Cir. 1993) ("While not dispositive of the issue, *de minimis* injuries suggest *de minimis* use of force by defendants.").

As the undisputed facts establish that defendants had a justification for the force used against plaintiff, the force used was minimal, and plaintiff sustained no injury therefrom, the undersigned finds that plaintiff has failed to establish an Eighth Amendment claim for excessive force.  *Hudson*, 501 U.S. at 7.  Defendants are therefore entitled to qualified immunity on plaintiff's excessive force claim brought against them in their individual capacities.  *Saucier*, 533 U.S. at 201.

24

Accordingly, defendants' motion for summary judgment should be granted.[7]

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED** and that plaintiff's claims be **DISMISSED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

---

[7] Although not raised by defendants in their motion for summary judgment, the undersigned notes that plaintiff's § 1983 claims for damages against defendants in their official capacities are barred by Eleventh Amendment immunity.  The Eleventh Amendment bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Michigan has not consented to civil rights suits in federal court.  *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004).  A suit against a state officer in his or her official capacity is simply another way of pleading an action against the state.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *VIBO Corp. v. Conway*, 669 F.3d 675, 691 (6th Cir. 2012).  Furthermore, states and their departments are not "persons" within the meaning of § 1983.  *See Will*, 491 U.S. at 71.  Defendants are entitled to dismissal with prejudice of plaintiff's claims for monetary damages against them in their official capacities.  And, as the undersigned concludes that plaintiff fails to establish a constitutional violation in this case, there is no official liability, even for injunctive relief.  *See Davenport v. Casey*, 521 F.3d 544, 554 (6th Cir. 2008) (holding there is no municipal liability if the employee-officer did not violate plaintiff's constitutional rights); *Mattox v. City of Forest Park*, 183 F.3d 515, 523 (6th Cir. 1999) ("If the plaintiffs have failed to state a claim for violation of a constitutional right at all, then the City of Forest Park cannot be held liable for violating that right nay more than the individual defendants can.").

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: December 4, 2014            s/Michael Hluchaniuk
                                  Michael Hluchaniuk
                                  United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 4, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to <u>all counsel of record</u>, and I certify that I have mailed by United States Postal Service the foregoing pleading to the following non-ECF participant(s), at the following address(es): <u>Walter Cummings #417330, Lakeland Correctional Facility, 141 First Street, Coldwater, MI 49036</u>.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov