UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WALTER CUMMINGS,

    Plaintiff,

    v.

PAUL KLEE, ET AL.,

    Defendants.

_____/

Case No. 14-10957

SENIOR UNITED STATES DISTRICT
JUDGE ARTHUR J. TARNOW

MAGISTRATE JUDGE MICHAEL J.
HLUCHANIUK

**ORDER ADOPTING IN PART REPORT AND RECOMMENDATION [35]; GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [15]; AND STAYING CASE PENDING REQUEST FOR PRO BONO COUNSEL**

Plaintiff, a prisoner in the custody of the Michigan Department of Corrections, alleges that Defendants violated Plaintiff's rights under the United States Constitution and the Americans with Disabilities Act of 1990 (ADA). Defendants filed a Motion for Summary Judgment [15] on June 2, 2014. Plaintiff filed a Response [31] on August 27, 2014. On October 14, 2014, the Magistrate Judge issued an Order [33] partially staying discovery pending the Court's resolution of Defendants' Motion for Summary Judgment [15]. On December 4, 2014, the Magistrate Judge issued a Report and Recommendation (R&R) [35] recommending that the Court grant Defendants' Motion for Summary Judgment

1

and dismiss Plaintiff's claims.  On January 7, 2015, Plaintiff filed a Motion to Compel Discovery [37].  Plaintiff filed Objections to the Report and Recommendation [40] on February 3, 2015.[1]

For the reasons stated below, the Report and Recommendation [35] is **ADOPTED IN PART**.  Defendants' Motion for Summary Judgment [15] is **DENIED** with respect to Plaintiff's deliberate indifference claim, Plaintiff's excessive force claim against Defendants Campbell, McRoberts, and McConnell in their individual capacities, and Plaintiff's ADA claim against Defendant Klee in his official capacity.  The motion is **GRANTED** in all other respects.  The case is **STAYED** pending resolution of the Court's request for pro bono counsel to represent Plaintiff.

## FACTUAL BACKGROUND

The Court adopts the following summary of the relevant facts, as set forth in the R&R:

> Plaintiff is a prisoner confined by the Michigan Department of Corrections, currently confined at the Lakeland Correctional Facility in Coldwater, Michigan. In September 2013, plaintiff was confined at the Gus Harrison Correctional Facility. On September 26, 2013, plaintiff was moved from a "barrier free" cell in Housing Unit 3 to a "non-barrier free" cell in Housing Unit 1

---

[1] Pursuant to the Court's Order Granting Plaintiff's Motion for Extension of Time to File Objections [41], Plaintiff's Objections [40] are timely.

because he did not qualify for placement in a "barrier free" cell as he did not have a permanent wheelchair accommodation which would require access to a "barrier free" cell. Rather, plaintiff's accommodation was for a distance only wheelchair, which does not require special housing. (Dkt. 1, Complaint ¶¶ 11, 15; Dkt. 15-4, McRoberts Aff. ¶ 3). Plaintiff fell down some stairs in Housing Unit 1 that same day. (Dkt. 1, Complaint, ¶ 19). A video recording shows plaintiff attempting to climb the stairs, then straightening up and falling backwards. Plaintiff was transported on a gurney to Health Care to be examined, complaining of pain in his lower back and head. (Dkt. 1, Complaint, ¶ 19) According to plaintiff's medical records, there was no edema or sign of injury on plaintiff's head or lower back, although plaintiff complained of pain in his lower back on movement. (Dkt. 15-5). Plaintiff was given Tylenol and ice for his back and head and allowed to rest in Health Care for one hour. (*Id.*)

Although plaintiff alleges that the medical staff did not instruct plaintiff to leave, the medical records indicate that he was treated and released with activity restrictions for two days, and that when custody officers arrived to escort plaintiff back to his cell, he refused to get up off the gurney or make any attempt to leave. (Dkt. 1, ¶ 24; Dkt. 15-5). Defendants Campbell, McRoberts and McConnell ordered plaintiff to get into his wheelchair and return to his unit but plaintiff refused to do so, stating that he could not get up because of the injuries he sustained from the fall. (Dkt. 1, Complaint ¶¶ 21-22; Dkt. 15-3, Campbell Aff. ¶ 5; Dkt. 15-4, McRoberts Aff. ¶ 4). Defendants again ordered plaintiff to return to his cell or he would be placed in segregation for refusing to follow orders. (Dkt. 15-3, Campbell Aff. ¶ 5). Plaintiff alleges that defendants and other correctional officers physically removed him from the emergency room to segregation. (*Id.* ¶¶ 25-29). Plaintiff alleges that when he could not sit in his wheelchair because of pain, he was thrown to the

3

floor and defendants placed their knees on his head and
neck area and lower back before handcuffing him and
dragging him to the hold. (*Id.* ¶¶ 29-32). Defendants,
however, assert that Health Care indicated that plaintiff
did not have any injuries that prevented him from
returning to his assigned cell and that custody staff were
instructed to assist in placing plaintiff in his wheelchair
so he could be removed from Health Care. (Dkt. 15-3,
Campbell Aff. ¶¶ 6,7; Dkt. 15-4, McRoberts Aff. ¶ 4).
Plaintiff refused to allow staff to assist him to his
wheelchair by stiffening his body and scooting onto the
floor from the wheelchair. (Dkt. 15-3, Campbell Aff. ¶
11; Dkt. 15-5, McConnell Aff. ¶ 7). Defendants allege
that plaintiff was using profanities and swinging his arms
back and forth, and that restraints were applied for the
safety of the staff and plaintiff. (Dkt. 15-5, McConnell
Aff. ¶ 8). Then, because plaintiff refused to allow staff to
transport him to segregation in the wheelchair, it became
necessary to physically carry plaintiff to segregation. (*Id.*
¶ 9). Plaintiff continued resisting staff by stiffening and
hanging his body, becoming "dead weight." (*Id.*)

Once in segregation, plaintiff was placed in a cage
on the floor, with no toilet or bed. (Dkt. 1, Complaint, ¶
33). A shield was placed over plaintiff as a safety
precaution and plaintiff's clothing was cut off and his
restraints were removed. (*Id.* ¶ 34; Dkt. 15-5, McConnell
Aff. ¶ 10). Plaintiff states he was left in the hold for five
hours, unable to move and that he urinated on himself
three times. (Dkt. 1, Complaint ¶¶ 34-37). Plaintiff later
was able to return to his cell via his wheelchair and had
to crawl up the stairs to get there. (*Id.* ¶¶ 40-41). Plaintiff
alleges that defendants used excessive force, they
conspired to cause him harm and retaliated against him,
and that defendants' conduct constituted cruel and
unusual punishment toward plaintiff, all in violation of
his rights under the First and Eighth Amendments to the
United States Constitution. Plaintiff also alleges that
defendants' actions violated the Americans with

4

Disabilities Act ("ADA"). Plaintiff seeks damages and injunctive relief.

## LEGAL STANDARDS

The Court reviews objections to an R&R on a dispositive motion *de novo.* 28 U.S.C. § 636(b)(1)(C). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must construe the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

ANALYSIS

Plaintiff brings claims for First Amendment retaliation, conspiracy, deliberate indifference in violation of the Eighth Amendment, excessive force in violation of the Eighth Amendment, and violation of Title II of the ADA.  He brings these claims against all Defendants in both their individual and official capacities.  He seeks damages against each Defendant, as well as injunctive relief prohibiting Defendants and the MDOC "from placing Plaintiff in a non-accessible facility" while Plaintiff is "disabled" within the meaning of the ADA.

## I.    First Amendment Retaliation and Conspiracy

Plaintiff objects to the R&R's conclusion that he did not exhaust administrative remedies for his First Amendment retaliation and conspiracy claims. Plaintiff quotes the following excerpt from one of his grievances:

> Grievant is in severe pain from his injurys and the excessive and unnecessary force by the C/O's, Deputy Warden Campbell and McRobert and Capt. McConnel.  Grievant is afraid for his health and safety and of retaliation for writing this grievance.

The Court agrees with the R&R's conclusion that because this grievance spoke only of Plaintiff's fear of *future* retaliation, rather than seeking redress for retaliation he had already suffered, it did not exhaust his retaliation claim.  Further, the grievance makes no conspiracy charge, and Plaintiff has not produced any other grievance in which he sought redress for the alleged conspiracy.  The Court

6

therefore agrees with the R&R's conclusion that Plaintiff has failed to exhaust his conspiracy charge as well.

## II.   Deliberate Indifference

The R&R concluded that Plaintiff failed to exhaust his deliberate indifference claim, though it acknowledged that Plaintiff's grievance concerning the incident can be read to allege deliberate indifference.   Specifically, the grievance complained that the segregation cage Plaintiff was placed in had no toilet or bed and that Plaintiff was left there without assistance for five hours, even though he urinated on himself.   The R&R added that a deliberate indifference claim premised on these facts would fail as a matter of law, reasoning as follows:

> The Sixth Circuit has previously held that "deprivations of fresh water and access to the toilet for a 20-hour period, while harsh, were not cruel and unusual punishment." *Hartsfield v. Vidor*, 199 F.3d 305, 310 (6th Cir. 1999) (citing *Stephens v. Carter Cnty. Jail*, 816 F.2d 682 (6th Cir. 1987)). Further, as in *Hartsfield,* "the record provides sworn testimony and documentation, not refuted by plaintiff beyond the allegations in his complaint, that adequate toilet breaks and opportunities to drink were provided to plaintiff." *Id.*; (Dkt. 15-8, Pg ID 138-42).

Plaintiff objects to the R&R's conclusion that he did not exhaust his deliberate indifference claim.   Plaintiff does not, however, address the R&R's conclusion that the claim must fail on the merits.

The Court agrees with Plaintiff: his grievance was sufficient to exhaust his claim that the conditions of his confinement in the segregation cell amounted to

7

deliberate indifference in violation of the Eighth Amendment. Defendants have failed to move for summary judgment on this claim on any grounds other than Plaintiff's alleged failure to exhaust, and have therefore failed to meet their burden as summary judgment movants. The Court disagrees with the R&R's suggestion that it is appropriate at this stage to decide the claim against Plaintiff on the merits, since the parties have not briefed the merits of the claim and Plaintiff has not been afforded a full opportunity for discovery. Accordingly, the Court will deny Defendants' Motion for Summary Judgment with respect to Plaintiff's deliberate indifference claim.

## III.   Excessive Force

The R&R concluded that Plaintiff had exhausted his Eighth Amendment excessive force claim. However, the R&R concluded that the claim is barred by the Eleventh Amendment to the extent it is brought against Defendants in their official capacities. Plaintiff does not address this conclusion in his Objections, and the Court adopts it. As further explained below, the R&R also concluded that Defendants were entitled to qualified immunity on Plaintiff's excessive force claim against them in their individual capacities. Plaintiff objects to the R&R's analysis of qualified immunity.

### A.   Defendant Klee

The R&R concluded that Plaintiff's excessive force claim must fail with respect to Defendant Klee because Defendant Klee had no connection to the incident aside from denying Plaintiff's resulting grievance.  In his Objections, Plaintiff argues that if Defendant Klee had not assigned him to a cell on the second floor, then Plaintiff would not have fallen while trying to climb the stairs and therefore would not have been forcefully removed from the healthcare unit, since he would not have been there.  Plaintiff appears to be suggesting that Defendant Klee may be held liable as a "but for" cause of the excessive force.  Plaintiff cites no authority for such a theory of liability, and the Court is not persuaded by it.  The Court agrees with the R&R's conclusion that Defendant Klee is entitled to summary judgment on Plaintiff's excessive force claim.  *See, e.g.*, *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) ("The denial of administrative grievances or the failure to act by prison officials does not subject supervisors to liability under 42 U.S.C. § 1983.") (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).

## B. Defendants Campbell, McRoberts, and McConnell

The R&R concluded that Defendants Campbell, McRoberts, and McConnell are entitled to qualified immunity on Plaintiff's excessive force claim.  Relying on MDOC video of the incident, the R&R reasoned that no reasonable jury could

9

conclude that Defendants acted "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). The R&R alternatively reasoned that no reasonable jury could find that Defendants employed more than a *de minimis* level of force. *Id.* at 9-10 ("The Eighth Amendment's Prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'") (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

Plaintiff objects that the parties' declarations "are squarely contradictory as to what force was used," creating a genuine issue of material fact. However, this argument does not contradict the R&R, which acknowledged that the parties advance conflicting accounts of the incident. In concluding that there is no genuine issue of material fact, the R&R relied on binding precedent holding that where video evidence substantiates one party's account of the facts and contradicts the other party's, a court ruling on a summary judgment motion may accept the facts as substantiated by the video evidence. *Scott v. Harris*, 550 U.S. 372, 378-81 (2007).

Plaintiff objects that the Court should not rely on Defendants' video evidence because Defendants have altered the videos and failed to produce other

videos that support Plaintiff's claim.  As recounted in the R&R, Plaintiff made similar allegations in his June 26, 2014 Motion to Compel [27].  On October 14, 2014, the Magistrate Judge issued an Order [33] denying Plaintiff's motion to compel and holding that Plaintiff had failed to show that the videos are unsuitable for consideration at the summary judgment stage.  The Magistrate Judge nevertheless directed Defendants to produce all video evidence of the incident or respond that no additional video evidence exists. In response, Defendants submitted an affidavit executed by the Administrative Assistant of ARF, who stated that no additional video evidence exists.  Plaintiff did not file an objection to the Magistrate Judge's Order [33] within fourteen days of service, despite the Order's explanation of the fourteen-day deadline.  Plaintiff therefore waived his right to seek review of the order.  *See* FED. R. CIV. P. 72; *Mattox v. City of Forest Park*, 183 F.3d 515, 519-20 (6th Cir. 1999).

In any case, Plaintiff's challenge to the video evidence is unconvincing.  In his Objections [40], Plaintiff asks the Court to compare the videos with MDOC reports concerning the incident, attached as exhibits to his recent Motion to Compel Discovery [37].  Plaintiff claims that the authors of the incident reports admitted to "excessive force issues" that are not shown in Defendants' videos. However, the Court has reviewed the incident reports and finds them consistent

with Defendants' video evidence.  Plaintiff draws attention to Officer McIntire's statement in his incident report that he applied leg restraints to Plaintiff—but this is not inconsistent with the videos, which show an officer (likely Officer McIntire) doing so.  Plaintiff also suggests that there must be an additional video of the incident, since the reports show that Officer Starrs used the camera in his "electronic control device" (taser) to record the incident.  Defendants, however, have submitted two distinct videos of the incident, one of which is likely the video recorded by Officer Starrs.  Plaintiff has not demonstrated that it was error for the R&R to rely on Defendants' video evidence in evaluating Defendants' Motion for Summary Judgment.

However, the Court has reviewed Defendants' video evidence and disagrees with the R&R's assessment of it as conclusive.[2]

  

---

[2] The Court has embedded portions of the video evidence in this opinion.

12

Though a reasonable jury could believe that Plaintiff's cries and other signs of pain were feigned or exaggerated, the jury could instead believe that they were genuine. Force causing the level of pain that Plaintiff expressed is not *de minimis*. Further, video cannot depict state of mind. Video is therefore rarely, if ever, conclusive on questions of intent, such as whether Defendants acted with the intent to cause Plaintiff harm. Here, the video evidence also fails to depict events probative of Defendants' state of mind, including the events in the healthcare unit that led to Defendants' decision to forcibly remove Plaintiff. In sum, Defendants have failed to establish that no reasonable jury could find that they acted objectively unreasonably in light of Plaintiff's clearly established right to be spared excessive force. The Court must therefore deny Defendants' Motion for Summary Judgment on Plaintiff's excessive force claim.

## IV.   The Americans with Disabilities Act

Plaintiff claims that Defendants violated Title II of the ADA by moving him from a "barrier free" cell to a "non-barrier free" cell. Defendants have moved for summary judgment on Plaintiff's ADA claim only on the grounds that Plaintiff failed to exhaust his administrative remedies. The R&R agreed that Plaintiff had failed to exhaust his ADA claim, since the only grievance Plaintiff had produced did not mention the ADA and included no allegations consistent with his ADA

13

claim.   In his Objections, Plaintiff argues that he did, in fact, exhaust the ADA claim.  He attaches a grievance alleging that Defendant Klee violated the ADA by placing him in a non-accessible unit, along with MDOC responses at each step of the grievance process.  On the basis of this new evidence, the Court concludes that Plaintiff has exhausted his ADA claim against Defendant Klee.

The R&R suggested that Plaintiff's ADA claim could not proceed even if it had been properly exhausted.   The R&R correctly noted that Plaintiff cannot maintain his Title II ADA claim against Defendants in their individual capacities. *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009) ("Title II of the ADA does not … provide for suit against a public official acting in his individual capacity."). However, Plaintiff has sued Defendant Klee in his official capacity as well.   A state official sued in his official capacity is a proper defendant for a Title II claim. *Id.* ("[T]he proper defendant under a Title II claim is the public entity or an official acting in his official capacity.") (citing *Carten v. Kent State Univ.,* 282 F.3d 391, 396–97 (6th Cir. 2002)).[3]  Though the R&R suggested that all of Plaintiff's claims against Defendants in their official capacities should be dismissed on their merits

---

[3]  In fact, Plaintiff's suit against Defendant Klee in his official capacity is essentially a suit against the state of Michigan.  *Mingus v. Butler*, 591 F.3d 474, 482 (6th Cir. 2010) (citing *Brotherton v. Cleveland*, 173 F.3d 552, 560-61 (6th Cir. 1999)).

14

or on the grounds of Eleventh Amendment immunity, its analysis did not address Plaintiff's ADA claim.[4]

In sum, the Court agrees with the R&R that Plaintiff has not exhausted his ADA claim with respect to Defendants Campbell, McRoberts, and McConnell. The Court will therefore grant these three defendants summary judgment on Plaintiff's ADA claim. However, Plaintiff has exhausted his ADA claim against Defendant Klee, which may be brought against him in his official capacity. Since Defendants have failed to identify any shortcoming in this claim aside from the alleged failure to exhaust, they have failed to meet their burden as summary judgment movants at this stage. The Court will therefore deny Defendant Klee summary judgment on Plaintiff's official-capacity ADA claim.

## CONCLUSION

The Court holds that Defendants are entitled to summary judgment on Plaintiff's claims, with the following exceptions: (1) Plaintiff's deliberate

---

[4] The R&R concluded that Plaintiff's official-capacity claims for injunctive relief cannot proceed because Plaintiff has not established a constitutional violation. The R&R did not address, however, whether Plaintiff has established a violation of the ADA. The R&R further concluded that Plaintiff's official-capacity claims for damages are barred by Eleventh Amendment immunity. However, Title II of the ADA has abrogated Eleventh Amendment immunity  with respect to certain claims; courts must apply a three-part test to determine if a Title II suit for damages is barred by the Eleventh Amendment. *Mingus*, 591 F.3d at 482. The R&R did not engage in this analysis.

15

indifference claim; (2) Plaintiff's excessive force claim against Defendants Campbell, McRoberts, and McConnell in their individual capacities; and (3) Plaintiff's ADA claim against Defendant Klee in his official capacity. Further proceedings, including any renewed motions for summary judgment following discovery on the merits, remain subject to the Court's referral of all pretrial matters to the Magistrate Judge. The Court concludes that these further proceedings will be sufficiently complex, in light of limitations on Plaintiff's ability to litigate, to warrant the Court's request for pro bono counsel for Plaintiff. *See* 28 U.S.C. § 1915(e)(1)*; Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993). Accordingly,

**IT IS ORDERED** that the Report and Recommendation [35] is **ADOPTED IN PART.**

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment [15] is **DENIED** with respect to Plaintiff's deliberate indifference claim, Plaintiff's excessive force claim against Defendants Campbell, McRoberts, and McConnell in their individual capacities, and Plaintiff's ADA claim against Defendant Klee in his official capacity. The motion is **GRANTED** in all other respects.

**IT IS FURTHER ORDERED** that the case is **STAYED** pending resolution of the Court's request for pro bono counsel to represent Plaintiff.

**SO ORDERED.**

s/ Arthur J. Tarnow

Arthur J. Tarnow

Dated: 3/26/2015                    Senior United States District Judge

17