UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WALTER CUMMINGS,                          Case No.: 14-10957

      Plaintiff,                          Arthur J. Tarnow
v.                                        United States District Judge

PAUL KLEE *et al*,                        Stephanie Dawkins Davis
                                          United States Magistrate Judge
      Defendants.
_____/

## REPORT AND RECOMMENDATION ON DEFENDANT JINDAL'S MOTION TO DISMISS (Dkt. 127) AND MDOC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 163)

## I.    PROCEDURAL HISTORY

Plaintiff, an inmate currently in the custody of the Michigan Department of Corrections, brings this action, *pro se*, under 42 U.S.C. § 1983, claiming a violation of his rights under the United States Constitution against defendants Klee, McRoberts, McConnel, and Campbell.  (Dkt. 1).  On February 10, 2016, this case was referred to the undersigned for all pretrial purposes.  (Dkt. 46).  On March 26, 2015, the Court adopted in part a Report and Recommendation granting in part, denying in part defendants' Klee, McRoberts, McConnel, and Campbell's motion for summary judgment.  (Dkt. 42).  On February 15, 2017, with leave of the Court, plaintiff filed an Amended Complaint adding defendants Thompson,

Pietrangelo, McIntire, Sissen, Garza, Starrs, Ellenwood, and Jindal.  (Dkt. 82).  On

November 30, 2017, Jindal filed her motion to dismiss.  (Dkt. 127).  Plaintiff

responded (Dkt. 135) and defendant replied (Dkt. 141).  Plaintiff filed a sur-reply

without leave of the Court, however, the Court will consider the sur-reply in this

instance.  (Dkt. 144).  The undersigned ordered Jindal to respond to plaintiff's sur-

reply, which she did.  (Dkt. 175).

The MDOC defendants (all defendants except Jindal) filed their motion for

summary judgment on April 20, 2018.  (Dkt. 163).  Plaintiff responded (Dkt. 173),

and MDOC defendants replied (Dkt. 180).

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's Amended Complaint

Plaintiff is a prisoner confined by the Michigan Department of Corrections,

currently at the Earnest C. Brooks Correctional Facility.  At all times relevant to

the claims in his Amended Complaint he was confined at the Gus Harrison

Correctional Facility.  Plaintiff's Amended Complaint brings claims arising out of

two events that occurred on the same day: his move to a non-accessible unit on

September 26, 2013 and his treatment during and after a fall down the stairs on

September 26, 2013.  The factual bases of plaintiff's amended complaint are as

follows.  Plaintiff states that he has a mobility impairment that qualifies as a

disability as defined by the Americans with Disabilities Act ("ADA"), (Dkt. 82, at

Pg. ID 721, ¶ 9).  He has been in a wheelchair since about 2011 ("three plus years"

preceding the filing of his original complaint).  (*Id.* at ¶ 13, Dkt. 1 at ¶ 13).  There

is a record of his impairment in a Special Accommodations Order indicating

"walker, wheelchair; distance, and attendant to assist with movement inside

institution."  (*Id.* at ¶ 11).  On September 26, 2013, plaintiff was moved from a

barrier-free cell to a non-accessible cell on the second floor at ARF.  (*Id.* at Pg. ID

721, ¶¶ 15-16).  Plaintiff told the "ARUS" that he could not climb the stairs, but

was told to go up the stairs or go to the "hold."  (*Id.* at ¶ 18).  He tried to climb the

stairs but fell down the stairs.  (*Id.* at ¶ 19).  Plaintiff injured his back and hit his

head hard on the floor, which made him feel dizzy and confused.  (*Id.* at ¶¶ 19-20).

While in Health Care after the fall, defendants Campbell, McRoberts, and

McConnel told plaintiff, "You should be in Hollywood, because we looked at your

fall and it looked almost real."  (*Id.* at ¶ 21).  Defendants Campbell and McRoberts

then told him to get off the examination table and get into his wheelchair, although

health care staff had not told plaintiff to leave.  Plaintiff informed these defendants

that he could not get up due to the injury to his head from the fall.  (*Id.* at ¶¶ 22-

24).

Defendants Campbell and McRoberts told McConnel to remove plaintiff

from the examination table.  McConnel called corrections officers (defendants

Thompson, Pietrangelo, McIntire, Sissen, Garza, and Starrs) to remove plaintiff.

(*Id.* at ¶ 26).  Defendants Thompson and McIntire, and non-defendant Guajardo[1]

pulled him from the table to the floor and tried to place him in his wheelchair, but

because of the pain he could not sit up-right in the chair.  (*Id.* at ¶ 29).  When these

defendants could not get him in the wheelchair they threw him to the floor, placed

their knees on his head, neck, and lower back, and handcuffed him.  (*Id.* at ¶ 30).

Defendant Starrs pointed a Taser gun at plaintiff and defendants Thompson and

McIntire picked him up by his handcuffed arms and dragged him from the

emergency room to segregation.  (*Id.* at ¶ 32).  To remove the handcuffs,

Thompson and Sissen placed a shield on his injured back and head, and cut off his

clothing leaving him naked even though he urinated on himself.  (*Id.* at ¶¶ 34-35).

In the five hours that plaintiff was lying on his face in the cell, defendants

Ellenwood, Jindal, and non-defendant Guajardo, did nothing to aid plaintiff.  (*Id.* at

¶ 37).

Plaintiff claims that Klee, Campbell, McRoberts, and McConnel showed

reckless disregard for his safety when they failed to act reasonably in response to

danger.  (*Id.* at ¶ 42).  These four defendants knew of and disregarded an

"excessive risk" to plaintiff's health and safety, and were aware of facts from

---

[1] The undersigned recommended that Guajardo be dismissed from this case without prejudice after plaintiff agreed to dismiss Guajardo because he was unable to provide the court with an address to serve Guajardo at this time.  (Dkt. 164).  This Court adopted the recommendation on June 5, 2018.  (Dkt. 172).  Guajardo is not currently a party to this action.

which the inference could be drawn that a substantial risk of serious harm existed. (*Id.* at ¶ 43).  According to plaintiff, all defendants exposed plaintiff to conditions that posed an unreasonable risk of damage to his "future health."  (*Id.* at ¶ 44). Plaintiff discussed his fall down the stairs with defendant Ellenwood who said she did not "call custody" to remove him from the emergency room, and that she was still treating him.  (*Id.* at ¶ 45).  According to plaintiff, defendants Campbell, McRoberts, McConnel, Thompson, Pietrangelo, McIntire, Sissen, Garza, and Starrs used unnecessary and excessive force.  (*Id.* at ¶ 46).  Plaintiff also states that it was cruel and unusual punishment for Klee, Campbell, McRoberts, McConnel, Ellenwood, and Jindal to remove plaintiff with excessive force. [2]  (*Id.* at ¶ 53).

Regarding defendant Klee, plaintiff states that Klee made materially false statements in his Step Two response to plaintiff's ARF 2013-10-2828-26A grievance, which affected the course and outcome of the grievance proceedings. Klee's statements were a part of a conspiracy to cover up for his deputy wardens. Further, Klee received two formal complaints from plaintiff about the danger of being confined in a non-accessible unit.  (*Id.* at ¶ 47-48).  He also alleges that defendants Klee, Campbell, McRoberts, McConnel, Ellenwood, and Jindal

---

[2] This allegation contained in paragraph 53 is inconsistent with the allegations in paragraphs 22-35, which detail the alleged use of force in moving plaintiff from health care to the hold.  In these paragraphs, plaintiff makes no mention of Jindal or Ellenwood's involvement in removing him.  Instead, he states that healthcare did not give the order to remove him.

conspired to harm and intimidate plaintiff by failing to provide medical attention in deliberate indifference to plaintiff's medical needs.  (*Id.* at ¶ 50).

Plaintiff further claims that defendants Klee, Campbell, McRoberts, McConnel, and Jindal violated plaintiff's First Amendment rights for retaliating against plaintiff in a variety of ways, including taking all the funds in plaintiff's account, interfering with his legal papers, placing plaintiff in segregation, transferring him to a different cell in violation of the ADA, threatening him for making reports, complaints, and grievances about prison conditions.  (*Id.* at ¶ 52).

Plaintiff states that all of the defendants knew he—a 68 year old inmate who needs the use of a wheelchair—was forced to crawl up and down the stairs from September 26, 2013 to January 22, 2014 on a daily basis, and that an unreasonable risk of harm to plaintiff was obvious.  The defendants thus violated the Eighth Amendment by disregarding the known risk, and violated the ADA.  (*Id.* at ¶ 55).

As to defendant Ellenwood, plaintiff asserts that Ellenwood provided "grossly inadequate treatment" and made medical decisions without specialized training for spinal problems.  (*Id.* at ¶ 59).  Regarding Jindal, plaintiff states that she had knowledge of plaintiff's medical problems through medical records, grievances, and a written letter before September 26, 2013.  Plaintiff brings a medical malpractice claim against Jindal and Ellenwood, stating that they did not inquire into essential facts necessary to make a professional judgment; they did not

6

conduct an adequate examination; they were not qualified to exercise judgment about plaintiff's spinal or head problems; they did not conduct tests that his symptoms called for; and they did not exercise ordinary knowledge, skill, and care. (*Id.* at ¶ 64, 66).

Plaintiff sues all defendants in their personal and official capacities.  (Dkt. 82, Pg. ID 716-17).

## III.    ANALYSIS AND RECOMMENDATIONS

### A.    <u>MDOC Defendants' Motion for Summary Judgment</u>

#### 1. Summary Judgment Standard of review[3]

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by: (A) citing to particular parts of materials in the record...; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

---

[3] While some judges in this District have treated motions for summary judgment on the issue of failure to exhaust administrative remedies as unenumerated motions to dismiss under Rule 12(b)(6), *see e.g.*, *Neal v. Raddatz*, 2012 WL 488827 (E.D. Mich. Jan. 12, 2012), report and recommendation adopted in pertinent part, 2012 WL 488702 (E.D. Mich. Feb. 15, 2012), Judge Lawson has recently concluded that such a practice is not appropriate and legally unsupported. *See Anderson v. Jutzy*, 175 F.Supp.3d 781, 788 (E.D. Mich. 2016).  The undersigned accepts the *Anderson* rationale, and will apply the summary judgement standard to all defendants' exhaustion claims.

Fed.R.Civ.P. 56(c)(1).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986)).  Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'"  *Brown v. Scott*, 329 F.Supp.2d 905, 910 (6th Cir. 2004).

In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor.  *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario*, *Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not

satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

The Court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id*. at 254. Thus, if the plaintiff must ultimately prove his case at trial by a preponderance of the evidence, on a motion for summary judgment the Court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252-53. Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The Court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id*. at 327.

2.      Analysis

9

MDOC defendants raise three arguments for summary judgment: (1) plaintiff failed to exhaust administrative remedies; (2) the statute of limitations bars inclusion of the new defendants in plaintiff's amended complaint; and (3) they are entitled to qualified immunity on plaintiff's deliberate indifference and excessive force claims.  The undersigned will first address the statute of limitations argument, as that claim implicates this Court's subject matter jurisdiction.

a.      Statute of Limitations

Defendants argue that plaintiff's claims against Thompson, Peitrangelo, McIntire, Sissen, Garza, Starrs, and Ellenwood are barred by the statute of limitations.  (Dkt. 163, at p. 12).  Defendants establish that the statute of limitations on plaintiff's claims under § 1983 is three years.  Plaintiff filed his Amended Complaint in which he names the above listed defendants for the first time on February 15, 2017.  Therefore, according to defendants, the claims against these defendants pre-dating February 15, 2014, i.e. between September 26, 2013 and January 22, 2014, are barred by the statute of limitations.  (*Id.* at p. 14).

There is no federal statute of limitations for section 1983 claims.  Rather, "federal courts must borrow the statute of limitations governing personal injury actions in the state in which the section 1983 action was brought." *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003) (citing *Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985)).  In Michigan, the three-year statute of limitations for personal

injury claims outlined in Mich. Comp. Laws § 600.5805(1) governs section 1983 actions where the cause of action arises in Michigan. *Carroll v. Wilkerson*, 782 F.2d 44, 45 (6th Cir. 1986); *see also Chippewa Trading Co. v. Cox*, 365 F.3d 538, 543 (6th Cir. 2004) (noting that the three-year statute of limitations outlined in § 600.5805(1) is "borrowed for § 1983 claims."). However, the accrual of a section 1983 claim is a question of federal law, with reference to common law principles. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under those principles, "the statute of limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Collyer v. Darling*, 98 F3d 211, 220 (6th Cir. 1996).

Generally, "new parties may not be added after the statute of limitations has run." *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996). Further, "[s]ubstituting a named defendant for a 'John Doe' defendant is considered a change in parties, not a mere substitution of parties. Here, plaintiff's Amended Complaint adding the new defendants was indeed filed after the three-year statute of limitations had run. His claims are dated between September 26, 2013 and January 22, 2014. Therefore, an amendment adding parties filed January 23, 2017 or later would normally be barred. As such, the requirements of Fed.R.Civ.P. 15(c) must be met in order for the amendment adding the named defendant to relate back to the filing of the original complaint." *Id.*

In this instance, the undersigned need not determine whether plaintiff's Amended Complaint relates back to the filing of the original complaint. The Sixth Circuit has held that, "If a motion to amend is granted, the complaint is deemed amended as of the date the proponent of the amendment sought leave to amend, and not when the request is actually granted." *Shillman v. United States*, 2000 WL 923761, at *6 (6th Cir. 2000) (citing *Mayes v. AT & T Information Systems, Inc.,* 867 F.2d 1172 (8th Cir.1989)); *see also Moore v. Indiana*, 999 F.2d 1125, 1131 (7th Cir. 1993) ("As a party has no control over when a court renders its decision regarding the proposed amended complaint, the submission of a motion for leave to amend, properly accompanied by the proposed amended complaint that provides notice of the substance of those amendments, tolls the statute of limitations, even though technically the amended complaint will not be filed until the court rules on the motion."); *Horacek v. Seaman*, No. 08-10866, 2009 WL 2928546, at *15 (E.D. Mich. Sept. 10, 2009) (Battani, J.) ("[P]laintiff's motion for leave to amend and proposed amended complaint were filed on January 21, 2009. For purposes of the limitations period, this filing of the proposed amended complaint tolls the limitations period.") (citing *Moore v. Indiana,* 999 F.2d 1125, 1131 (7th Cir. 1993)).

Plaintiff filed what this Court construed as a motion to amend his complaint on July 14, 2016. The Court granted the motion on January 21, 2017, (Dkt. 80),

and plaintiff filed the Amended Complaint for service on February 15, 2017.  (Dkt. 82).  The complaint is deemed amended as of the date of the motion to amend. *Shillman*, 2000 WL 923761, at *6.  Having filed his motion and proposed amended complaint on July 14, 2016, his claims against the newly-added defendants dating between September 26, 2013 and January 22, 2014, are not barred by the three-year statute of limitations and the new defendants are proper parties to this action.

b.    Exhaustion

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Section 1997e(a)'s "exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences."  *Porter v. Nussle*, 534 U.S. 516, 520 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter*, 534 U.S. at 532.  In *Jones v. Bock*, 549 U.S. 199, (2007), the Supreme Court held that failure to exhaust is an affirmative defense under the PLRA, and "inmates are not required to specially plead or demonstrate exhaustion in their complaints."  *Jones*, 549 U.S. at 216.  "Compliance with prison grievance procedures ... is all that is required by the

PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218. "Congress has provided in §1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[P]roper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 84, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006).

In *Jones v. Bock*, the Supreme Court also held that the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Jones*, 549 U.S. at 218. Accordingly, exhaustion is satisfied if plaintiff complied with the applicable MDOC grievance procedure and defendants bear the burden of showing otherwise. *Kramer v. Wilkinson*, 226 Fed. Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants."). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden-the plaintiff on a claim for relief or the defendant on an affirmative defense-his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized

that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.

Here, pursuant to MDOC policy directive 03.02.130 which is entitled "Prisoner/Parolee Grievances," there are four stages to the grievance process that must be followed before a prisoner can seek judicial intervention, each with specific time limits. (Policy Directive, Dkt. 163-2, Ex. A). First, the prisoner must attempt to resolve the issue with the staff member(s) involved within two business days of becoming aware of a grievable issue. (*Id.* at ¶ P). If the issue is not resolved, the prisoner may file a Step I grievance within five business days of the attempted resolution. (*Id.*). If the prisoner is not satisfied with the Step I outcome, he must request a Step II appeal form and then file the Step II appeal within 10 business days. (*Id.* at ¶ BB). If the inmate is still not satisfied with the result, or if the inmate does not receive a response, he must then file a Step III appeal within 10 business days after receiving the response, or if there is no response, within ten days after the response was due. (*Id.* at ¶FF). The Step III response ends the administrative process. A grievance may also be rejected for a number of enumerated reasons including, if the grievance is untimely. (*Id.* at ¶ G(4)).

i.     ARF 1310-2828-26a ("2828")

MDOC defendants argue that grievance 2828 does not exhaust administrative remedies against any of the defendants because plaintiff did not appeal the grievance through to Step III.  (Dkt. 163, at p. 8).  Defendants attach the MDOC Prisoner Step III Grievance Report, which does not include grievance 2828 on its list of Step III grievances.  (Dkt. 163-3, Pg. ID 1485-92).  Defendants also attach the 2828 Steps I and II forms and responses, which do not include a Step III appeal.  Defendants further contend that this grievance expressly names defendants Campbell, McRoberts, and McConnel, and named Klee only in reference to his response to the grievance.  Defendants contend that plaintiff did not file any grievance against Thompson, Peitrangelo, McIntire, Sissen, Garza, Starrs, and Ellenwood related to his amended complaint.  (*Id.* at p. 8-9).

Plaintiff argues that 2828 does exhaust administrative remedies.  (Dkt. 173, at p. 4-5).  The prison did not file a timely response to his grievance at Step I, and plaintiff was not interviewed in relation to his Step I grievance.  Instead, plaintiff contends that the grievance was addressed on its merits, at Step II.  Plaintiff also attaches the 2828 grievance forms and responses.  The difference in plaintiff's attachment is that his Step III grievance appeal form is filled out, but there is no response or indication that the Step III grievance was ever sent.  (*Id.* at Pg. ID

1652).  In his response brief, plaintiff does not affirmatively state that he appealed the grievance through Step III.

Plaintiff is correct that MDOC addressed grievance 2828 on the merits, at Step II.  (*See* Dkt. 163-4, Pg. ID 1519).  Although defendants' submission of plaintiff's 2828 grievances and appeals indicate that plaintiff did not appeal the grievance through Step III, this appears to be incorrect.  In plaintiff's sur-reply to defendant Jindal's motion to dismiss, he attached his 2828 grievance and appeals. Included in this attachment is a Step III response from MDOC indicating that plaintiff had appealed from Step II to Step III, and affirming the Step II rejection. (Dkt. 144, Pg. ID 1329).  Indeed, non-MDOC defendant Jindal admits that 2828 was appealed through Step III.  (Dkt. 175, at p. 2).  In light of plaintiff's evidence, defendants' argument that 2828 was not appealed through Step III necessarily fails. Turning to its substance below, grievance 2828 is sufficient to exhaust some of plaintiff's claims against some of the MDOC defendants.

In summary, the grievance contains the following factual allegations. Plaintiff states that this grievance is about excessive force used while transporting him from the emergency room to segregation, and leaving him naked on the floor after he urinated on himself.  (Dkt. 163-4, Pg. ID 1525-26).  His allegations in the grievance mirror the complaint: he recounts his fall down the stairs, his history of pain in his knees, hip, and lower back; Campbell and McRoberts telling plaintiff to

get off the examination table; McConnel enlisting other corrections officers to

remove him to segregation; pulling him to the floor and placing their knees on his

head and lower back; placing him in a cage naked even though he urinated on

himself; and recounting that health care and corrections officers walked by and did

nothing to help him.  He also complains that he is "afraid for his health and safety

and of retaliation for writing this grievance."  (*Id.*).

Defendants argue that the only defendants named in the grievance are

Campbell, McRoberts, and McConnel, and that Klee is named only in relation to

his Step II response.  Defendants Klee, Campbell, McRoberts, and McConnel

brought this exact same argument before the Court in their first motion for

summary judgment (Dkt. 15).  The Court adopted that part of the prior Report and

Recommendation finding that 2828 did not exhaust remedies as to defendant Klee.

Defendants argued that plaintiff's only reference to Klee is at Step II regarding his

response, and that this reference is insufficient involvement to impose liability

under § 1983.  Accordingly, defendants argue that plaintiff failed to exhaust his

administrative remedies as to defendant Klee.  (Dkt. 163, at p. 8).  The Report and

Recommendation stated,

> [T]he undersigned agrees that plaintiff has failed to
> exhaust his administrative remedies.  Plaintiff does not
> name Klee in his grievance nor complain of any actions
> attributed to Klee in that grievance that would put him on
> notice that he was being grieved.  Indeed, Klee's only
> involvement with the incident grieved by plaintiff is his

Step II response.  And, plaintiff acknowledged that Klee was not involved in the underlying incident when he stated in his Step II appeal that "[t]he only person that can respon[d] to this grievance is Warden P. Klee because both Deputy Warden[s] are involved and the only superior of these men is him.  V. Webb interviewed the grievant at Step I."  [(Dkt. 163-4, Pg. ID 1524).][4]  It is well settled that a plaintiff cannot maintain a claim against a prison official based solely on his or her denial of the plaintiff's grievance because "[t]he 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983."  *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)); *see also Etheridge v. Evers*, 326 F. Supp.2d 818, 823 (E.D. Mich. 2004) ("plaintiff must allege some specific, personal wrongdoing on the part of the individual defendants, and theories of vicarious liability or respondeat superior are not sufficient") (citing *Rizzo v. Goode*, 423 U.S. 362, 376 (1976)).  "The mere denial of a prisoner's grievance states no claim of constitutional dimension."  *Alder v. Corr. Med. Servs.*, 73 Fed. Appx. 839, 841 (6th Cir. 2003).  A plaintiff's claim is against the subjects of the grievances, here McConnel, McRoberts and Campbell, not those who merely decided whether to grant or deny the grievances.  *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim."); *Lee v. Mich. Parole Bd.*, 104 Fed. Appx. 490,

---

[4] Plaintiff's amended complaint contains additional allegations regarding Klee, such as that Klee received two letters, one pre-dating and one post-dating plaintiff's grievance, "about the danger of being confine[d] in a non-accessible unit," but those allegations were not part of plaintiff's grievance and thus are precluded for failure to exhaust.  See Green v. Tudor, 685 F. Supp.2d 678, 691 (W.D. Mich. 2010) ("The law is clear that the allegations that an official ignored a prisoner's letter are insufficient to establish liability.") (quoting Watson v. McGinnis, 964 F. Supp. 127, 130 (S.D.N.Y. 1997)); Hall v. Raja, 2010 WL 1258204, at *5 (E.D. Mich. Mar. 30, 2010) ("Since the grievance cannot include an event that had not yet occurred," the grievance could not be said to include an event that occurred six days after plaintiff filed his grievance).

493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Nwaebo v. Hawk-Sawyer*, 83 Fed. Appx. 85, 86 (6th Cir. 2003) (same); *Simpson v. Overton*, 79 Fed. Appx. 117, 120 (6th Cir. 2003) ("[T]he denial of an appeal cannot in itself constitute sufficient personal involvement to state a claim for a constitutional violation."); *Martin v. Harvey*, 14 Fed. Appx. 307, 309 (6th Cir. 2001) ("The denial of a grievance is not the same as the denial of a request to receive medical care.").

(Dkt. 35, p. 11-13). The Court agreed that Klee was entitled to summary judgment on the excessive force claim. (Dkt. 42, at p. 8-9).

Reconsideration of this issue is unwarranted under the law of the case doctrine. Under this doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). "Accordingly, the doctrine 'does not apply if the court is "convinced that [its prior decision] is clearly erroneous and would work a manifest injustice."'" *Pepper v. United States*, 562 U.S. 476, 506-07 (2011) (quoting *Agostini v. Felton*, 521 U.S. 203, 236 (1997)). Application of the doctrine is discretionary, and courts should be reluctant, absent good cause, to revisit prior rulings. *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 131 (2d Cir. 1997), cert denied 522 U.S. 948 (1997) (citation omitted). It is appropriate to invoke the doctrine in this matter, given that this issue was already decided by Judge Hluchaniuk and his ruling was adopted

by Judge Tarnow.  The amended complaint does not affect the application of this prior ruling because the allegations concerning Klee remain the same, and the issue requiring exhaustion is also the same.  Because the grievance and argument are identical to those brought to the Court in the first motion, the undersigned recommends the same disposition for the foregoing reasons.

Defendants also assert that plaintiff never grieved defendants Thompson, Peitrangelo, McIntire, Sissen, Garza, Starrs, and Ellenwood.  (Dkt. 163, at p. 8).  In grievance 2828, plaintiff only expressly named Campbell, McRoberts, and McConnel, but also stated that McRoberts and Campbell "had Capt. McConnel . . . get some C/Os and remove grievant from the gurnie [sic]."  (Dkt. 163-4, Pg. ID 1526).  When the "C/Os" came they pulled him to the floor and tried to get him into the wheel chair.  (*Id.*).  Plaintiff named in his amended complaint the corrections officers summoned by McConnel as those listed above, except Nurse Ellenwood, who is not alleged to have been one of the corrections officers who helped remove plaintiff to segregation.  Defendants do not address plaintiff's reference to the corrections officers in 2828.  The undersigned suggests that these references to the corrections officers are sufficient to exhaust the claim against them.

"[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural

rules,'—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88).  The MDOC grievance rules require a prisoner to include the "[d]ates, times, places, and names of all those involved in the issue being grieved" in his grievance. MDOC Policy Directive 03.02.130 ¶ R (July 2007).  Plaintiff did not name the corrections officers in his grievance.  However, failure to name an individual later sued is not necessarily fatal to a prisoner's suit so long as prison officials had fair notice of the claim raised against the defendants such that there is an opportunity to resolve it.

Indeed, while the grievance procedure *may* promote early notice to those who might later be sued, that has not been considered one of the leading purposes of the exhaustion requirement.  *Moffat v. MDOC*, 2010 WL 3906115, *7 (E.D. Mich. 2010) (citing *Jones*, 549 U.S. at 219); *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2006) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation").

> But, at the same time, the grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit, and for many types of problems this will often require, as a practical matter, that the prisoner's

> grievance identify individuals who are connected with
> the problem.

*Johnson*, 385 F.3d at 522.

Since the Supreme Court decided *Jones v. Bock,* the Sixth Circuit has stated

that courts ought not impose severe technical requirements on prisoners who

comply with the spirit and purpose of the administrative exhaustion rules.  "We

have also explained that the purpose of the PLRA's exhaustion requirement 'is to

allow prison officials a fair opportunity to address grievances on the merits, to

correct prison errors that can and should be corrected and to create an

administrative record for those disputes that eventually end up in court.'"  *Mattox*

*v. Edelman*, 851 F.3d 583, 591 (6th Cir. 2017), quoting *Reed-Bey v. Pramstaller*,

603 F.3d 322, 324 (6th Cir. 2010); s*ee also Hall v. Raja*, 2010 WL 3070145, at *5

(E.D. Mich. Apr. 26, 2010) (holding that prisoner had exhausted his administrative

remedies despite the fact that he did not specifically name the medical staff whose

decisions he grieved).

> A fair indicator that the purpose of the grievance was
> fulfilled is the prison's response to the inmate's
> complaint.  If the information in the grievance is too
> vague or imprecise, a response so indicating would tell
> the interested parties that more detail is necessary.
> However, when the prison officials address the merits of
> the prisoner's complaint without mentioning a problem
> identifying the object of the grievance, the administrative
> system has worked, and the prison officials have had the
> "opportunity to correct [their] own mistakes."  *Woodford*,
> 548 U.S. at 89 (internal citation and quotation marks

omitted).

*Harris-Bey v. Alcodray*, 2017 WL 3124328, at *3 (E.D. Mich. July 24, 2017);

*Reed-Bey v. Pramstaller,* 603 F.3d 322, 325 (6th Cir. 2010) ("When prison

officials decline to enforce their own procedural requirements and opt to consider

otherwise-defaulted claims on the merits, so as a general rule will we.").

Here, MDOC addressed plaintiff's grievance on the merits, discussing that

plaintiff stiffened his body which prevented "staff" from placing him in his

wheelchair, and that the decision was made to move him to segregation.  (Dkt.

163-4, Pg. ID 1519).  This response does not mention difficulty in identifying the

staff who moved plaintiff to segregation.  Under *Reed-Bey*, MDOC's decision to

consider the merits and decline to enforce their own procedural rules waives any

administrative error in the grievance.  *See Reed-Bey*, *supra*.  Therefore, the

undersigned suggests that plaintiff has exhausted administrative remedies on his

claims against Thompson, Peitrangelo, McIntire, Sissen, Garza, and Starrs.

Moreover, the grievance gave prison officials fair notice of the claims

against the defendant corrections officers.  *Johnson*, 385 F.3d at 522.  Plaintiff

stated that McConnel called "some" corrections officers on September 26, 2013, to

assist in moving plaintiff from healthcare.  McConnel, McRoberts, and Campbell

were certainly aware of which corrections officers were called to assist.

Additionally, the facts alleged provide sufficient information for prison officials to

identify which corrections officers were called by McConnel on that day to help

move him to segregation, and the video provided by defendants in the initial

motion for summary judgment shows the corrections officers.  Indeed, failure to

name can be excused if it is obvious from the facts alleged in the grievance that the

defendants were involved.  *Calhoun v. Hill,* 2008 WL 4277171, at *3 (E.D. Mich.

Sept. 17, 2008); *Binion v. Glover*, 2008 WL 4097407, at *3-4 (E.D. Mich. Aug. 29,

2008).  A reasonable jury could conclude that prison officials were on notice of

which corrections officers were involved in the incident complained of in the

grievance.  As such, the undersigned suggests that 2828 exhausts the excessive

force claim against the MDOC defendant corrections officers.

Plaintiff did not name Ellenwood in this grievance either.  However, plaintiff

makes a reference to corrections officers and *health care staff* walking by the cage

and not assisting plaintiff.  (Dkt. 163-4, Pg. ID 1526).  In his Amended Complaint,

plaintiff states that both Ellenwood and Jindal did nothing to aid plaintiff while he

was in the cage for five hours.  (Dkt. 82, at ¶ 37).  Ellenwood does not address

whether this language in the grievance exhausts plaintiff's deliberate indifference

claim against her with regard to his health care while in the cage.  Notably, Judge

Tarnow has already ruled that the language in plaintiff's grievance complaining

that he was left naked on the floor without assistance even though he urinated on

himself is sufficient to exhaust a deliberate indifference claim.[5]  (Dkt. 42, at p. 7-

8).  In light of this ruling, the question becomes whether plaintiff's reference to

health care staff failing to aid plaintiff during the five hours he was in segregation

is sufficient to exhaust his claim against Ellenwood.

Again, "[a]lthough the [MDOC] policy requires a grievance to include

specific names, those requirements are relaxed when the purpose of the grievance

has been achieved."  *Hall v. Raja*, 2010 WL 1258204, at *4 (E.D. Mich. Mar. 30,

2010).  A grievance accomplishes this purpose when the inmate identifies the

individual by title or other information in the grievance.  *See Beedle v. DeMasi*,

2006 WL 2700753, at *3 (E.D. Mich. Sept. 18, 2006) (citing *Skinner v. Unknown

Grandson,* 2006 WL 1997392 at *6 (E.D. Mich., July 14, 2006) ("The purpose of

the exhaustion requirement is to give notice to prison officials of the inmates'

claims so that the complaints can be resolved by prison administrators in the first

instance ... Identifying a particular individual accomplishes this purpose, regardless

of whether the individual is identified by his name, position, or other information

in the grievance").  And, "when the prison officials address the merits of the

prisoner's complaint without even mentioning a problem identifying the object of

---

[5] Because Judge Tarnow was ruling on a motion brought by the four defendants expressly named in plaintiff's 2828 grievance and appeals, the undersigned does not suggest that it is appropriate to apply the law of the case doctrine to hold that 2828 is sufficient to exhaust remedies as to the unnamed "health care" personnel who were not yet a party to this action when Judge Tarnow made his ruling.

the grievance, the administrative system has worked and the prison officials have

had the "opportunity to correct [their] own mistakes." *Hall*, 2010 WL 1258204, at

*4 (citing *Woodford*, 548 U.S. 81, 89, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006)

(internal citation and quotation marks omitted)). The prison's failure to reject the

grievance for failure to name the individuals involved, but rather proceeding to

address the merits of the grievance, waives a procedural defect. *Reed-Bey,* 603

F.3d at 325.

There is mixed authority on whether plaintiff's general reference to "health

care" is sufficient to identify the healthcare staff that did not provide assistance to

plaintiff while he was in the cage. *Compare Binion v. Glover*, 2008 WL 4097407,

at *4 (E.D. Mich. Aug. 29, 2008) (ultimately concluding that "failure to identify a

person by name does not preclude exhaustion through the MDOC system, as long

as the prisoner identifies a defendant based on the factual allegations.") (citing

cases)) and *Grear v. Gelabert*, 2008 WL 474098, *7-8 (W.D. Mich. Feb. 15, 2008)

(where prisoner named "health care staff" in a grievance and prison officials did

not reject it for failure to identify the specific persons about whom plaintiff was

complaining, court concluded that the claim was exhausted as to all health care

staff, including those named in the lawsuit) with *Solomon v. Mich. Dept. of Corr.*,

2011 WL 4479300, at *3 (Aug. 31, 2011) *report and recommendation adopted by*

2011 WL 4479407 (W.D. Mich. Sept. 27, 2011) ("A prisoner must specifically

mention the involved parties in the grievance to alert the prison officials of the problems so that the prison has a chance to address the claims before they reach federal court." (citing cases)) and *Crawford v. MDOC*, 2010 WL 1424246, at \*3 (W.D. Mich. Mar. 31, 2010) ("health care at KCF" insufficient to exhaust administrative remedies (citing cases)).

Here, plaintiff's grievance provided prison officials with the following information from which they could identify the health care personnel on staff who did not aid plaintiff: The date, September 26, 2013; the fact that the complained of inaction took place during a five-hour window while he was in the hold; and "health care" staff passed by and did nothing to aid him. (Dkt. 163-4, at Pg. ID 1525-26). Even though the grievance only references health care staff passing by the cage, in the response on the merits at Step II, MDOC addressed the fact that he was offered medical care but refused. (Dkt. 163-4, at Pg. ID 1519). On this record, the undersigned suggests that plaintiff complied with the "spirit and purpose of the administrative exhaustion rules," *Hall*, *supra*, as to Ellenwood.

For example, in *Christian v. Michigan Dept. of Corr.*, 2013 WL 5348832 (E.D. Mich. Sept. 24, 3013) (adopting report and recommendation), the plaintiff referenced "health services" when addressing the involvement of unnamed nurses in his grievance. The plaintiff also provided a timeline of 17 kites he sent to health services and listed the kites. *Id.* at \*5. The court stated, "Christian's general

referral to 'health services' *in combination with* his specific recitations of the date and subject of each of the kites sent to them is sufficient to identify the target of the grievance, the RN Defendants." *Id.* (emphasis in original).  In addition to providing information which could be used to identify the particular nurses in health services, the prison addressed the grievance on the merits rather than rejecting it for failure to identify.  Therefore, the court found that the grievance exhausted the plaintiff's claims against the health services defendants.

Likewise, here, because the grievance provided sufficient information upon which to identify the health care staff making the rounds on the particular date and time in question; because the prison addressed the grievance on the merits rather than rejecting it for failure to name; and in light of the Court's prior ruling that the language in the grievance is sufficient to exhaust the deliberate indifference claim, the undersigned concludes that 2828 exhausts plaintiff's deliberate indifference claim against Ellenwood.  *See also Burton v. Kakani*, 2009 WL 3101046, at *3 (E.D. Mich. Sept. 23, 2009) (finding that "because [plaintiff's] grievance provided sufficient information based upon which the prison could easily identify the individuals being grieved, it  served to exhaust [plaintiff's] claims against those individuals despite the fact that the individuals' names were not included in the grievance.").

Finally, this Court has already addressed whether grievance 2828 exhausts plaintiff's retaliation and conspiracy claims.  Under the doctrine of the law of the case, discussed above, the Court's holding should stand here.  The Court quoted the 2828 Step I grievance in which plaintiff states,

> Grievant is in severe pain from his injurys [sic] and the excessive and unnecessary force by the C/O's, Deputy Warden Campbell and McRoberts and Capt. McConnel. Grievant is afraid for his health and safety and of retaliation for writing this grievance.

The Court then stated,

> The Court agrees with the R&R's conclusion that because this grievance spoke only of Plaintiff's fear of future retaliation, rather than seeking redress for retaliation he had already suffered, it did not exhaust his retaliation claim.  Further, the grievance makes no conspiracy charge, and Plaintiff has not produced any other grievance in which he sought redress for the alleged conspiracy.  The Court therefore agrees with the R&R's conclusion that Plaintiff has failed to exhaust his conspiracy charge as well.

(Dkt. 42).  The grievance obviously has not changed since the Court issued its ruling.  As such, the ruling should stand that 2828 does not exhaust retaliation or conspiracy claims.

### ii.   N-AR-2013-11-3226-12z ("3226)

In his response brief, plaintiff lists other grievances which he believes support his amended complaint allegations.  Grievance 3226 is one such grievance. (Dkt. 173, at p. 6).  MDOC defendants argue that none of the listed individuals in

the grievance are MDOC defendants.  (Dkt. 180, at p. 3).  In this grievance plaintiff alleges that Jindal, Lori Kopka, "Nurse Elmwood," and Nurse Jane Doe were deliberately indifferent to his serious medical needs and committed medical malpractice because they had knowledge of cruel conditions and they did not respond reasonably to these conditions and risks.  (Dkt. 163-3, Pg. ID 1496). Plaintiff goes on to claim that he has fallen five times and injured himself, but Jindal and the others have kept him in harm's way despite his documented history of chronic pain in his knees, hip, lower back, and feet.  Plaintiff noted on the grievance form that the date of the incident was November 12, 2013, in between September 26, 2013 and January 22, 2014, the dates within which plaintiff claims he was not allowed appropriate accommodations for his disabilities.  (*Id.*).  In the Step I response interview summary, the prison official noted that plaintiff stated that he is a fall risk and has fallen in the shower and down the stairs, and further stated that Health Care put him in harm's way "by not providing him with the proper accommodations."  (*Id.* at Pg. ID 1497).  In his Step II appeal plaintiff states that Jindal and the other personnel were aware that he could not walk more than three or four steps and that he had fallen.  At Step III plaintiff states that his treatment plan put him in "harm's way", and a physician with the same medical specialty "would not have use [sic], they placed grievant in a non-accessible unit, that has cause [sic] him severe injurys [sic]."  (*Id.* at Pg. ID 1494).

This grievance is directly related to his claim regarding lack of proper medical accommodations at the prison.  Defendants' argument that Grievance 3226 failed to exhaust plaintiff's administrative remedies is unavailing for two reasons. First, it cannot definitively be concluded that the grievance fails to name any MDOC defendant.  As noted, the grievance lists "Nurse Jane Doe" without indicating the nurse's employment affiliation.  The grievance also lists a "Nurse Elmwood," rather than Nurse Ellenwood, who is named in the amended complaint. Yet, in comparing the allegations of the amended complaint with those set forth in the grievance, it might reasonably be inferred that Nurse Ellenwood is, in fact, Nurse Elmwood and plaintiff made a mistake regarding her name.  In any event, the naming of "Nurse Jane Doe" coupled with the detail of the grievance likely presented sufficient information for administrators to determine who was involved in the events recounted therein.  *See Beedle v. DeMasi*, 2006 WL 2700753, at *3 (E.D. Mich. Sept. 18, 2006) (citing *Skinner v. Unknown Grandson,* 2006 WL 1997392 at *6 (E.D. Mich., July 14, 2006) ("The purpose of the exhaustion requirement is to give notice to prison officials of the inmates' claims so that the complaints can be resolved by prison administrators in the first instance ... Identifying a particular individual accomplishes this purpose, regardless of whether the individual is identified by his name, position, or other information in the grievance"); *Harrington v. Smolinski,* 2006 WL 549383 (W.D. Mich. March 6,

2006) (identification of defendant as "Classification Director" rather than by name

sufficient for exhaustion purposes)).

Second, and perhaps of greater importance, defendants waived the purported

naming defect.  Administrators addressed Grievance 3226 on its merits and

generated a response that clearly demonstrates that they received fair notice of the

issue being grieved; conducted a fairly robust review which afforded them the

opportunity to discover which health care professionals were involved in

responding to his requests for accommodations; and reached a resolution based on

the same.  As such, the principle aims of the PLRA were met, and pursuant to

*Reed-Bey,* defendants have waived any apparent naming error with respect to the

grievance.  603 F.3d at 325 ( "When prison officials decline to enforce their own

procedural requirements and opt to consider otherwise-defaulted claims on the

merits, so as a general rule will we.").  As the grievance was appealed through Step

III, and defendants offer no other basis on which to determine that this grievance

does not exhaust remedies as to Ellenwood, the undersigned suggests that

plaintiff's claim of deliberate indifference regarding lack of accommodations

between September 26, 2013 and January 22, 2014 is exhausted as to Ellenwood.

However, this grievance does not exhaust any retaliation claim as plaintiff in

no way alludes to such a claim in this grievance.  Further, the grievance does not

exhaust a conspiracy claim, as plaintiff does not allege conspiracy or even that the

health care personnel worked together to keep from plaintiff proper medical accommodations.

### iii.     ARF-2013-11-3227-28B ("3227")

This Court has already addressed grievance 3227 in a prior ruling and concluded that it exhausts remedies as to defendant Klee.  Under the law of the case, that determination should stand.  In this grievance at Step I, plaintiff states that Klee and the ADA Coordinator (not a defendant in this case) are in violation of the ADA "by placing grievant in non-accessible unit when grievant is disable [sic] and handicap [sic] as define [sic] by the ADA."  (Dkt. 163-3, Pg. ID 1506). This grievance was appealed through all three steps.  (*Id.* at Pg. ID 1503). Regarding this grievance, the Court stated,

> In his Objections, Plaintiff argues that he did, in fact, exhaust the ADA claim.  He attaches a grievance [3227] alleging that Defendant Klee violated the ADA by placing him in a non-accessible unit, along with MDOC responses at each step of the grievance process.  On the basis of this new evidence, the Court concludes that Plaintiff has exhausted his ADA claim against Defendant Klee.

(Dkt. 42, at p. 14).  The undersigned recommends finding again that grievance 3227 exhausts plaintiff's ADA claim against Klee.

As with the prior two grievances, the undersigned also suggests here that 3227 does not exhaust a retaliation or conspiracy claim involving all of the defendants.

34

iv.     N-NMP-13010013268B

Defendants state that there is no record of this grievance on the Step III

Grievance Report.  Plaintiff cites this grievance as exhausting remedies, but does

not discuss the grievance.  Plaintiff did, however, attach what appears to be the

Step I Grievance form,[6] but neglected to attach the response at Step I or any

appeals.  (Dkt. 173, Pg. ID 1662).  Unfortunately, this grievance form is almost

completely illegible except that it is clear that plaintiff wrote the date of the

incident as January 4, 2013.  In it plaintiff states he is grieving an injury he

sustained on MDOC property on November 20, 2012.  (*Id.*).  It is from the date of

the incident that the undersigned may deduce that this grievance does not exhaust

administrative remedies as to any of the defendants because the incident date

precedes the date of the incident which forms the basis of plaintiff's complaint.

Plaintiff's complaint is about conduct that occurred on September 26, 2013

through January 22, 2014, over nine months after this grievance was filed.  It is not

possible that plaintiff was grieving conduct that had not yet occurred.  Moreover,

although it appears that there was a response at Step I, there is no indication that it

was appealed to Steps II or III.  As such, the undersigned concludes that this

---

[6] The undersigned draws this conclusion from the fact that plaintiff has attached grievances and responses to his brief, all of which clearly list the grievance identifier, except there is one illegible Step I form.  As none of the other grievances have the identifier "N-NMP-13010013268B," the undersigned will assume that this grievance is the one which plaintiff calls N-NMP-13010013268B.  (Dkt. 173, Pg. ID 1662).

grievance does not exhaust administrative remedies as to any of the claims in the amended complaint.

### C.     Qualified Immunity

MDOC defendants assert that they are entitled to qualified immunity on plaintiff's Eighth Amendment deliberate indifference and excessive force claims. (Dkt. 163, at p. 16).  Defendants recite the correct standards for qualified immunity, deliberate indifference, and excessive force.  However, they provide no argument on their entitlement to qualified immunity on plaintiff's deliberate indifference to medical needs claims.  (*See* Dkt. 163, at pp. 19-22, 23).  They do not discuss the facts of this case in relation to the deliberate indifference standard, i.e. the objective and subjective prongs of such a claim.  They also do not connect the facts in this case to the qualified immunity standard in relation to the deliberate indifference claim.  MDOC defendants have thus not met their burden to establish entitlement to qualified immunity; namely that they have not violated plaintiff's clearly established constitutional rights.  Therefore, the undersigned recommends denying MDOC defendants' motion for summary judgment as to their claim for qualified immunity on plaintiff's deliberate indifference claims.[7]

---

[7] It has been held that, "issues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted).

As to their argument for qualified immunity on the excessive force claim, in its prior ruling this Court addressed this argument on the same evidence (video and affidavits attached to the first motion for summary judgment[8]).  Defendants have not provided any new or additional evidence for the Court to consider, despite the addition of the new MDOC defendants. [9]  Indeed, their argument under excessive force is identical to the argument raised at docket no. 15.  The Court reviewed defendants' video evidence and found that it is not conclusive as to their liability for excessive force.  The Court further stated,

> Though a reasonable jury could believe that Plaintiff's cries and other signs of pain were feigned or exaggerated, the jury could instead believe that they were genuine. Force causing the level of pain that Plaintiff expressed is not *de minimis*.  Further, video cannot depict state of mind.  Video is therefore rarely, if ever, conclusive on questions of intent, such as whether Defendants acted with the intent to cause Plaintiff harm.  Here, the video evidence also fails to depict events probative of Defendants' state of mind, including the events in the healthcare unit that led to Defendants' decision to forcibly remove Plaintiff.  In sum, Defendants have failed to establish that no reasonable jury could find that they acted objectively unreasonably in light of Plaintiff's clearly established right to be spared excessive force.

---

[8] In the current motion for summary judgment, MDOC defendants attached Klee's affidavit regarding his conduct in relation to the amended complaint allegations.  (Dkt. 163-13). However, the Court has already determined, above, that plaintiff's excessive force claim against Klee is unexhausted.  (*See* Dkt. 42).

[9] Tellingly, defendants kept the sentence in argument in which they distinguish between defendants and non-party corrections officers who removed plaintiff from healthcare.  (Dkt. 163, at p. 24).  The Corrections officers were named in the Amended Complaint and are now parties to this action.

> The Court must therefore deny Defendants' Motion for
> Summary Judgment on Plaintiff's excessive force claim.

(Dkt. 42, at p. 13).  Because defendants did not submit new evidence or new

argument, the undersigned suggests that, under the doctrine of the law of the case,

the Court's holding still stands, and MDOC defendants are not entitled to qualified

immunity on the excessive force claim.

### B.   Defendant Jindal's Motion to Dismiss

Defendant Jindal moves for partial dismissal of plaintiff's claims against her.

(Dkt. 127, at p. 1).  Jindal seeks dismissal of plaintiff's Americans with Disabilities

Act ("ADA") claim and his medical malpractice claim for failure to state a claim,

and argues that plaintiff failed to exhaust some of his claims against her.

### 1.   Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first

comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim

showing that the pleader is entitled to relief,' in order to 'give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S.

41, 47 (1957)).  A plaintiff is also obliged "to provide the grounds of his [or her]

entitlement to relief," which "requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do."  *Ass'n of*

*Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007)

(quoting *Twombly*, 550 U.S. at 555 (citations and quotation marks omitted)).

The Supreme Court raised the bar for pleading requirements beyond the old

"no-set-of-facts" standard of *Conley v. Gibson*, 355 U.S. 41, 78 (1957), that had

prevailed for the last few decades. *Courie v. Alcoa Wheel & Forged Products*, 577

F.3d 625, 2009 WL 2497928, *2 (6th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S.

662 (2009)); *see also Twombly*, 550 U.S. at 555. In *Iqbal*, the Supreme Court

explained that a civil complaint only survives a motion to dismiss if it "contain[s]

sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." *Iqbal*, 556 U.S. at 677. The Sixth Circuit observed that this new

standard is designed to screen out cases that, while not utterly impossible, are

"implausible." *Courie*, at *2. "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. And

although the Court must accept all well-pleaded factual allegations in the

complaint as true, it need not "'accept as true a legal conclusion couched as a

factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478

U.S. 265, 286 (1986)); *see also Iqbal*, 556 U.S. at 678.

In ruling on defendants' motion, the Court may consider the pleadings of the

parties, including copies of any written instrument(s) attached to a pleading as their

attachment thereto renders them a part of the pleading under Fed. R. Civ. P. 10(c).

*See also Commercial Money Center, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 326,

335-336 (6th Cir. 2007) (Motion for judgment on the pleadings was not converted

to motion for summary judgment by court's consideration of documents that were

not attached to counterclaim, but were attached to the complaint and the answer to

counterclaim).  The undersigned also recognizes that generally if a court considers

matters outside of the pleadings, the court must convert the motion into one for

summary judgment under Rule 56.  However, "[w]hen a court is presented with a

12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto,

public records, items appearing in the record of the case and exhibits attached to

defendant's motion to dismiss so long as they are referred to in the Complaint and

are central to the claims contained therein."  *Bassett v. Nat'l Coll. Athletic Ass'n*,

528 F.3d 426, 430 (6th Cir. 2008); *see also Weiner v. Klais & Co.*, 108 F.3d 86, 89

(6th Cir. 1997) (noting that the Sixth Circuit has "held that 'documents that a

defendant attaches to a motion to dismiss are considered part of the pleadings if

they are referred to in the plaintiff's complaint and are central to h[is] claim'")

(quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th

Cir. 1993)).  "[I]n general, a court may only take judicial notice of a public record

whose existence or contents prove facts whose accuracy cannot reasonably be

questioned."  *Passa v. City of Columbus*, 123 Fed. Appx. 694, 697 (6th Cir. 2005).

2.    American with Disabilities Act (ADA) claim

Jindal argues that plaintiff failed to state a claim upon which relief can be granted under Title II of the ADA.  (*Id.* at p. 5).  Under the ADA, plaintiff must establish: (1) he is a qualified person with a disability; (2) defendants are subject to the ADA; and (3) he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of his disability.  (*Id.*); *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015).  Jindal contends that she is not liable under the ADA because the ADA prohibits discrimination against disabled individuals by a "public entity," which is defined as "any State or local government or any department, agency, special purpose district, or instrumentality of a State or States or local government."  (*Id.*); 42 U.S.C. §§ 12132 and 12131(1)(A-B).  Neither a private prison health care company nor an individual medical provider is a "public entity," accordingly, plaintiff's ADA claims against Jindal fails.  (*Id.*).  Plaintiff did not substantively respond to this argument.

While it is recognized that the ADA applies to state prisoners, *McKinley v. Bowlen*, 2001 WL 493394, at *1 (6th Cir. May 1, 2001), it is well settled that there is no individual liability under the ADA, as individual defendants are not liable for damages for an alleged violation of the ADA.  *See Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009) ("Title II of the ADA does not [ ] provide for suit against a

public official in his individual capacity"); *Kaufman v. Corizon Health, Inc*., 2013

WL 1289313, at *15 (E.D. Mich. Feb. 22, 2013) (granting summary judgment to

defendants because there is no individual liability under the ADA).  Thus,

plaintiff's ADA claims against Jindal fails as a matter of law.

Notably, plaintiff also brought suit against Jindal in her official

capacity.  (Dkt. 82, at p. 3).  A suit against Jindal in her official capacity under §

1983 is a suit alleging that an official policy or custom of the corporation (here,

Corizon) caused an alleged deprivation of a federal right.  *Street v. Corr. Corp. of

Am.*, 102 F.3d 810, 817-18 (6th Cir. 1996); *Starcher v. Corr. Med. Sys., Inc*., 7

Fed. Appx. 459, 465 (6th Cir. 2001).  Jindal does not make mention of plaintiff's

official capacity claim against her under the ADA.  However, Jindal's

employer, Corizon is not a public entity subject to suit under the ADA even if it

contracts with a public entity such as the MDOC to provide a service.  *Larson v.

Michigan Dep't of Corr.*, 2018 WL 2717493, at *3 (E.D. Mich. June 5, 2018)

(Hood, J.) (citing *Matthews v. Pennsylvania Dep't of Corr.*, 613 Fed. Appx. 163,

169-70 (3d Cir. 2015)) (("[Corizon] is not a public entity subject to suit under

the ADA even if it contracts with a public entity to provide a service.")).  Thus, to

the extent that plaintiff's amended complaint suggests an official capacity ADA

claim, it too fails as a matter of law and must be dismissed against Jindal.

2. Medical Malpractice

Jindal argues that plaintiff's medical malpractice claim fails for two reasons. First, plaintiff has not met the statutory requirements for a medical malpractice claim under Michigan law because plaintiff did not provide notice of his intent to sue and he did not file an Affidavit of Merit to support his amended complaint. (Dkt. 127, at p. 6).  Second, plaintiff's malpractice claim makes nothing more than bare legal conclusions and offers only his own personal opinions to support his claim.  This kind of pleading is insufficient to satisfy federal notice pleading requirements.  (*Id.*).

Plaintiff did not substantively respond to this argument.  However, plaintiff states that he has exhausted his claims and lists a "Notice of Intent" that he filed on January 15, 2014 and sent to Klee, Kopka (not a defendant in this case), Corizon, Inc., Jindal, and Dr. Brady.  (Dkt. 135, at p. 6).  However, there is no notice of intent in the record and plaintiff did not file an Affidavit of Merit with his complaint or amended complaint.  (*See* Dkt. 1, 82).

Michigan law requires a plaintiff to send a Notice of Intent to the health professional to be sued for medical malpractice (M.C.L. § 600.2912b) and to file an Affidavit of Merit with the complaint (M.C.L. § 600.2912d), or otherwise the plaintiff may not file suit for medical malpractice.  This Court has held that these Michigan law requirements are substantive, and thus apply in federal court.  As

such, this Court has held that a plaintiff's failure to either send a Notice of Intent or file an Affidavit of Merit with the complaint are fatal to a medical malpractice claim. *Bade v. United States*, 2012 WL 1555072, at \*8-10 (E.D. Mich. May 1, 2012) (Tarnow, J.); *Jones v. Correctional Medical Services, Inc.*, 845 F. Supp. 2d 824 (W.D. Mich. 2012) (Finding that under *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and *Hanna v. Plumer,* 380 U.S. 460, 468, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), that the Michigan medical malpractice statutory requirements are substantive and apply in federal court); *Johnson v. Williams*, 2017 WL 4236548, at \*15 (E.D. Mich. Sept. 25, 2017) (Tarnow, J.); *Boone v. Heyns*, 2017 WL 3977524, at \*4 (E.D. Mich. Sept. 11, 2017) (Tarnow, J.) (dismissing an inmate's negligence, medical malpractice, and intentional infliction of emotional distress claims because he failed to comply with Mich. Comp. Laws §§ 600.2912b and 600.2912d).  Therefore, because plaintiff did not comply with the Michigan medical malpractice statutory requirements, the undersigned recommends dismissing the claim from this complaint.

   3. Exhaustion of Administrative Remedies

   Jindal raises her exhaustion defense as an unenumerated 12(b)(6) motion. "Whether the Court treats Jindal's exhaustion argument as a motion for summary judgment or an unenumerated 12(b) motion, the result will be the same: if granted, the dismissal will be without prejudice, and it will not count as a "strike" under 28

U.S.C. § 1915(g)." *Neal v. Raddatz*, 2012 WL 488827, at *3 (E.D. Mich. Jan. 12, 2012).[10]  The exhaustion standard is stated above.

Jindal argues that plaintiff failed to exhaust his administrative remedies on some of his claims against her.  (Dkt. 127, at p. 7).  Jindal did not have possession of all of plaintiff grievances when she filed her motion to dismiss.  In his response brief, plaintiff cited to grievances 2828, 3226, and 3227, all discussed above, as exhausting remedies against her.  He attached these grievances to his sur-reply, which this Court did not grant permission to file.  However, the Court decided to consider the sur-reply (Dkt. 174) and Jindal responded to the sur-reply regarding the grievances she did not have when she filed her motion (Dkt. 175).  Jindal contends that plaintiff filed only one grievance which exhausts his claim against her that he did not have proper medical accommodations related to his alleged risk of falling, grievance 3226.  (*Id*. at p. 2).  Jindal asserts that plaintiff did not file a grievance against Jindal regarding his claim that she and other defendants did not provide medical treatment following a fall on September 26, 2013.  (Dkt. 127, at p. 9).

---

[10] As discussed *supra* at p.7, FN 3, all defendants' exhaustion claims are considered herein under the summary judgment standard.

a.      Grievance 3227

Grievance 3227 was the one in which plaintiff named Klee and the ADA

Coordinator and alleged that they were in violation of the ADA by placing plaintiff

in a non-accessible unit.  (Dkt. 175, Pg. ID 1675).  Nowhere in this grievance did

plaintiff name or allude to Jindal.  Prison policy requires that the grievant name the

individuals involved.  In any event, as discussed above, the ADA claim against

Jindal should be dismissed, regardless of whether plaintiff exhausted an ADA

claim against her.

b.      Grievance 3226

Jindal agrees that grievance 3226 exhausts administrative remedies on his

claim that he did not have proper medical accommodations related to his alleged

risk of falling, and that as a result he had fallen on the stairs and in the shower.

(Dkt. 175, at p. 2).  However, Jindal contends that 3226 does not exhaust as to his

deliberate indifference claim regarding his medical care after his fall down the

stairs on September 26, 2013.  (*Id.*).

In this grievance plaintiff alleges generally that Jindal and other medical

personnel were deliberately indifferent to his serious medical needs and committed

medical malpractice because they had knowledge of cruel conditions and they did

not respond reasonably to the risk.  (Dkt. 127-1, Pg. ID 1146).  Plaintiff goes on to

claim that he has fallen five times and injured himself, but Jindal and the others

46

have kept him in harm's way despite his documented history of chronic pain in his knees, hip, lower back, and feet.

The grievance process and exhaustion requirements are designed to give prison officials enough information to investigate an inmate's claims, not to give notice to individuals that a claim has been asserted against them. "We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation." *Martin v. MacLaren*, No. 14-cv-208, 2015 WL 4928937, at * (W.D. Mich. Aug. 13, 2015) (citing *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2006)). "[I]t is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006).

While this grievance certainly gives notice of plaintiff's claim of lack of medical accommodations between September 26 and January 22, a review of the grievance, appeals, and the responses do not suggest that prison officials were on notice of plaintiff's claim of lack of proper medical care after he fell down the stairs on September 26, 2013, as he alleges in his amended complaint. Plaintiff only discusses lack of accommodations causing him to fall a number of times on

the stairs and in the shower.  Plaintiff does not specifically address his fall on September 26 or discuss medical care from any of the listed personnel.  Therefore, the undersigned agrees with Jindal that plaintiff did not exhaust his claims related to medical care on September 26, 2013 in this grievance.  This grievance does, however, exhaust plaintiff's claim for deliberate indifference due to lack of proper medical accommodations.[11]

c.      Grievance 2828

Again, in this grievance, plaintiff recounts the events of the day, just as in his Amended Complaint: his fall down the stairs; being taken to Health Care; McRoberts telling plaintiff to get off the examination table and into his wheelchair; Campbell, McRoberts, McConnel, and the other corrections officers' alleged unnecessary force when they pulled plaintiff to the floor, handcuffed, and dragged him to the "hold" and left him there for five hours in his own urine without assistance from corrections officers or health care staff who passed by.  (Dkt. 144, Pg. ID 1321, 1322, 1325).

Plaintiff did not allege that any health care staff were involved in moving plaintiff from health care to segregation.  Rather, plaintiff is grieving excessive force on the part of Campbell, McRoberts, McConnel, and other corrections

---

[11] To the extent this grievance implicates a claim under the ADA and medical malpractice, as discussed above the undersigned recommends dismissing the ADA and medical malpractice claims against Jindal.

officers.  As such, the undersigned suggests that 2828 does not exhaust his excessive force claim against Jindal, to the extent any such claim was raised.

As to his claims against Jindal for lack of medical care after his fall on September 26 (the deliberate indifference claim), the undersigned concludes that as is the case with defendant Ellenwood, and for the same reasons, 2828 exhausts plaintiff's deliberate indifference claim against Jindal.  As stated above, Judge Tarnow already ruled that the language implicating Jindal—that health care staff and corrections officers passed by the cage without aiding plaintiff—is sufficient to exhaust the deliberate indifference claim.  Further, the prison addressed the grievance on the merits, stated that medical care was offered but refused, and did not reject the grievance for failure to name.  Finally, the details in the grievance allow prison officials to easily identify the health care staff at the prison on September 26, 2013, during a five-hour window, who made their rounds near the "cage."  *See Christian*, *supra*.

In support of her argument that 2828 does not exhaust remedies against her, Jindal attaches to her reply brief the Grievance Category Codes, which describe the designation of the last three digits of each grievance number.  For example, a grievance ending in "28b" means the grievance was rejected due to "vague, illegible, extraneous information."  (Dkt. 141, at Exhibit B).  A grievance ending in "26a" means that the allegation in the grievance was of excessive use of force.

(*Id.*).  Plaintiff cites N-AR-2013-10-2828-26a ("2828") and ARF-2013-11-3227-28b ("3227").  Jindal notes that these grievances, which have these designators, do not relate to his allegations against her because they do not involve health care.

Jindal has not provided authority suggesting that the Grievance Category Codes are determinative of the content of the grievance such that the Court need not review the grievances themselves in order to determine whether the grievances exhaust remedies as to her, and the undersigned knows of no such authority.  The Grievance Category Codes document is not sufficient on its own to find that these grievances do not exhaust remedies.  For the reasons stated above, the undersigned concludes that 2828 exhausts plaintiff's deliberate indifference claim.

This Court already determined that 2828 did not exhaust his retaliation and conspiracy claims.  (Dkt. 42, at p. 6).  3226 and 3227 also do not exhaust those claims as there is no discussion of retaliation or conspiracy in these grievances either.  As such, the undersigned concludes that plaintiff's claims against Jindal for excessive force, retaliation, and conspiracy are not exhausted and should be dismissed from this case.

C.    Conclusion

For the foregoing reasons, the undersigned concludes as follows:

(1) The only claim exhausted against Klee is his claim for lack of proper accommodations under the ADA; (2) Plaintiff has exhausted his excessive force

claim against all MDOC defendants except Klee and Ellenwood; (3) Plaintiff has

exhausted his deliberate indifference claim against all MDOC defendants except

Klee; (4) The MDOC defendants are not entitled to qualified immunity on

plaintiff's deliberate indifference and excessive force claims; (5) Plaintiff's claims

against Jindal under the ADA and for medical malpractice should be dismissed; (6)

Plaintiff has not exhausted any excessive force claim against Jindal; (7) Plaintiff

has exhausted his deliberate indifference claims for lack of proper medical

accommodations and for lack of proper medical care after his fall on September

26, 2013 against Jindal; (8) Plaintiff has not exhausted his retaliation and

conspiracy claims against any defendant, and those claims should be dismissed.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

Jindal's motion to dismiss (Dkt. 127) be **GRANTED IN PART AND DENIED**

**IN PART** and that MDOC defendants' motion for summary judgment (Dkt. 163)

be **GRANTED IN PART AND DENIED IN PART** in accordance with

conclusions 1-8 above.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  August 19, 2018                    s/Stephanie Dawkins Davis
                                          Stephanie Dawkins Davis
                                          United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on August 19, 2018, I electronically field the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by United States Postal Service to the following non-ECF participant: Walter Cummings #417330, Earnest C. Brooks Correctional Facility, 2500 S. Sheridan Drive, Muskegon Heights, MI 49444.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov